Roger BARKER, Patty MacDonald and Malcolm MacDonald,
On Behalf of Themselves and All of the Citizens, Residents,
Taxpayers, Inhabitants, and Owners of Real Property in
Fountain Lake School District No. 18 in Saline County,
Arkansas *v.* Henry FRANK, In His Official Capacity as
President and Member of the Board of Education of Fountain
Lake School District No. 18; Ron Koller, In His Official
Capacity as a Member of the Board of Education of Fountain
Lake School District No. 18; Eddie Culpepper, In His Official
Capacity as a Member of the Board of Education of Fountain
Lake School District No. 18; Tim Culbreth, In His Official
Capacity as a Member of the Board of Education of Fountain
Lake School District No. 18; Phil Mariage, In His Official
Capacity as a Member of the Board of Education of Fountain
Lake School District No. 18; Charles  Clark, In His Official
Capacity as Superintendant of Fountain Lake School District
No. 18; Freddie Barton, In His Official Capacity as Saline
County Clerk; and Nancy Elrod, In Her Official Capacity as
Saline County Collector

96-305                                    939 S.W.2d 837

Supreme Court of Arkansas
Opinion delivered March 17, 1997

*Gill Law Firm, P.A.,* by: *Glenn E. Kelley* and *C. Tad Bohannon,* for appellants.

*Laser, Wilson, Bufford & Watts, P.A.,* by: *Dan F. Bufford;* and *Nichols, Wolff, Ledbetter & Campbell, P.A.,* by: *Mark W. Nichols,* for appellees Frank, Koller, Culpepper, Culbreth, Mariage, and Clark.

ROBERT L. BROWN, Justice. Appellants Roger Barker, Patty MacDonald, and Malcolm MacDonald (hereinafter referred to as "taxpayers") own real property in Saline County and reside within Fountain Lake School District #18, which includes part of Saline County and part of Garland County. The appellees are members of the Board of Fountain Lake School District #18, the County Clerk of Saline County, and the County Collector of Saline County.

The complaint filed by the taxpayers against the appellees alleged that in July 1993 the State Assessment Coordination Division advised the Saline County Judge that the preliminary ratio of the assessed value of real property to actual value of the real property had fallen below 18 percent and that the state turnback funds

to the county were in jeopardy. To cure this problem, reappraisal of land located in Saline County was suggested, and a reappraisal was done. In August 1994, the Saline County Equalization Board received the results of the reappraisal, which showed that the aggregate value of taxable real property in the school district for 1994 had increased 28.8% over that in 1993.

At the core of the taxpayers' complaint is their assertion that the collection of the 1994 school district tax constitutes an illegal exaction because of the reappraisal and the failure of the school district to roll back taxes. This is so, they allege, because the school district stands to receive revenues exceeding by more than 10% those received in 1993, which violates the specific requirements of Amendment 59 of the Arkansas Constitution.[1] The taxpayers assert that because the aggregate value of taxable real and personal property itself eclipsed 1993 by more than 10%, the school district must roll back its rate of taxation under Amendment 59. Otherwise, the tax is illegal.

The taxpayers further complain that a number of statutory tasks related to the reassessment of property have not been performed by the school district and by Saline County public officials. For example, they point out that the Saline County Clerk must certify the 1994 assessed value of land located in the school district under Ark. Code Ann. § 26-26-403 (Repl. 1992), which was not done. Also, the Saline County Clerk must report to the school district's governing body and provide certification of the assessment data on land in Saline County under the same code section, which allegedly was a duty not performed. Finally, the taxpayers allege that the school district's governing body must complete certain forms and return them to the Saline County Clerk, using the data previously provided by the clerk, as required by Ark. Code Ann. § 26-26-404 (Repl. 1992). This, too, was not accomplished, according to the complaint.

The complaint sought a writ of mandamus (1) to the Saline County Clerk, requiring him to perform his duties, and (2) to the

---

[1] The essential provisions of Amendment 59, adopted by vote of the people in 1980, which are at issue in this matter are set out at Article 16, § 14 of the Arkansas Constitution. For ease of reference, we will refer to this constitutional provision as Amendment 59.

school district to complete the rollback form and roll back its tax rate pursuant to the State Constitution. The taxpayers further sought a writ of prohibition to prevent the collection of 1994 real property taxes in violation of Amendment 59. Next, the taxpayers prayed for judgment declaring the collection of 1994 real property taxes in the school district to constitute an illegal exaction under Amendment 59 as revenue collected which is more than 10% above revenues collected in 1993. Finally, they sought to enjoin the appellees from further violations of Amendment 59.

The school district moved to dismiss the taxpayers' complaint for lack of subject matter jurisdiction. The Saline County Clerk and Collector moved similarly and asserted that the taxpayers' claims were required to be brought in county court because they involved county taxes. The taxpayers replied that the taxes at issue were school district taxes as opposed to county taxes, and, thus, circuit court was the appropriate jurisdiction. They further referred to their prayers for mandamus and prohibition, remedies which typically lie in circuit court.

The taxpayers subsequently supplemented their response to the motions to dismiss. They contended that even assuming that the school district tax was a county tax, jurisdiction in circuit court was still proper because the case involved an illegal exaction. Citing *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 901 S.W.2d 809 (1995), *supp. op. granting reh'g*, 321 Ark. 116-A, 901 S.W.2d 815 (1995), they contended that circuit court was an appropriate jurisdiction. The school district replied that the case did not involve an illegal exaction but merely a legal tax that was illegally collected.

After a hearing on the motions to dismiss, the trial court found that the school district tax was indeed a county tax, and that under *Foster v. Jefferson County Quorum Court, supra*, jurisdiction was vested exclusively in county court. The trial court also con-- cluded that the matter more appropriately lay in chancery court as opposed to circuit court because injunctive relief was sought. The trial court finally stated that it would dismiss the case without prej-- udice so that the taxpayers could file in either chancery or county court, or appeal the matter. An order of dismissal was entered.

## I. Jurisdiction

■ The taxpayers urge as their initial point that the trial court erred in finding that a county tax was involved and that county court was the proper jurisdiction. The school district argues that the trial court did not rule that the tax was a county tax and that this issue is a "red herring." We disagree. The trial court stated: "[I]t is my understanding and my belief that this should go to county court, that I believe this is a county tax." Turning to the merits of this issue, the Arkansas Constitution does provide that county courts shall have exclusive jurisdiction in all matters relating to county taxes. Ark. Const. art. 7, § 28. We agree with the taxpayers, however, that the tax at issue here is not a county tax.

■ We first observe that under the constitution school taxes and county taxes are treated differently. This matter was clearly reflected in *Cole v. Blackwell*, 38 Ark. 271 (1881), where we stated that under Ark. Const. art. 14, § 3, the power to levy taxes for school purposes was solely that of the school districts and that such a levy was not within the jurisdiction of the county court. Although this section of the State Constitution has since been amended on two occasions, the language that school districts shall levy taxes remains intact. *See* Ark. Const. amends. 11 & 40.

■ We further observe that the General Assembly, the body to whom the State Constitution delegates the power to tax, has consistently treated school districts, counties, and municipalities as separate taxing units. *See, e.g.,* Ark. Code Ann. §§ 26-80-101 to -109 (1987 & Supp. 1995)(school district taxes); Ark. Code Ann. §§ 26-74-101 to -505 (1987 & Supp. 1995)(county sales and use taxes); Ark. Code Ann. §§ 26-75-101 to -801 (1987 & Supp. 1995)(municipal sales and use taxes). In addition, there are numerous statutes that contain language which differentiates between school district and county taxes, the most relevant being Ark. Code Ann. § 26-80-104(b) (1987), which provides that school taxes are to be collected in the same manner as county taxes. *See also* Ark. Code Ann. § 26-26-402(a)(1) (Repl. 1992) (requiring the rollback of city or town, county, school district, and community college district taxes); Ark. Code Ann. § 14-94-122(a)

(Supp. 1995)(requiring improvement district taxes to be paid in installments at the same time as county, city, and school district taxes).

■ Moreover, this court has observed that Article 14 of the State Constitution "makes it the duty of the Legislature to provide for the establishment, maintenance and support of a system of common schools in this State." *LeMaire v. Henderson*, 174 Ark. 936, 939, 298 S.W. 327, 329 (1927). We went on to say: "This court has recognized from the beginning that the Legislature must employ agencies to accomplish that object, and that a school district is a proper agency therefor." *Id.* Matters concerning public schools rest within the province of the State — not the county government. This makes good sense, especially when some school districts are situated in more than one county, as in the case at hand.

■ The distinction between county taxes and school district taxes is further driven home by the fact that although the General Assembly has given counties the responsibility of collecting school district taxes, Ark. Const. art. 16, § 11, states: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose." *Id.* This provision of the State Constitution has been interpreted to require that funds generated from school taxes must be credited to the school fund and may not be converted into the county's general fund for county purposes. *County Board of Education v. Austin*, 169 Ark. 436, 276 S.W. 2 (1925). This court has interpreted Ark. Const. art. 14, § 2, and Amendment 40, to the same effect. *See Special School Dist. v. Sebastian County*, 277 Ark. 326, 641 S.W.2d 702 (1982). This, again, is consistent with the limited powers of counties:

> The powers of the quorum court are limited. It does not have the power to change millages voted by city councils (Ark. Constitution Art. 12, Secs. 3 & 4 and Ark. Stats. 19-4501) and school districts (Amendment 40 Ark. Constitution), but its duty is simply to levy without change such millages as voted. This duty is purely clerical and the county clerk is required to extend taxes on the basis of the millages voted by city councils and school districts

without reference to levies made by the quorum court on city and school district millages.

*Layne v. Strode*, 229 Ark. 513, 518, 317 S.W.2d 6, 9 (1958).

■ Hence, it is clear that counties may levy taxes for county purposes only. As pointed out in *Layne v. Strode, supra*, this power in the counties does not include the power to levy school taxes. The role of the county is strictly clerical with respect to school district taxes in that it collects and disburses the tax money. We hold that school taxes are not county taxes, and, thus, exclusive jurisdiction does not lie in county court.

## II. Circuit Court Jurisdiction

■ We turn next to the question of whether proper jurisdiction lies in circuit court. In *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 901 S.W.2d 809 (1995), *supp. op. granting reh'g*, 321 Ark. 116-A, 901 S.W.2d 815 (1995), the initial opinion (*Foster I*) held that Ark. Const. art. 16, § 13, did not designate a specific court in which illegal exaction actions must be litigated.[2] We recognized once more in *Foster I* that "an [illegal exaction] action in the circuit court for declaratory judgment is well chosen." *Foster v. Jefferson County Quorum Court*, 321 Ark. at 109, 901 S.W.2d at 811, *quoting Jones v. Clark*, 278 Ark. 119, 122, 644 S.W.2d 257, 259 (1983). As we noted in *Foster I*, that is consistent with Ark. Const. art. 7, § 11, which provides: "The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." *Id.* Under this provision, unless the constitution confers jurisdiction exclusively in another court, the circuit court has either exclusive or concurrent jurisdiction. *Foster v. Jefferson County Quorum Court, supra; State v. Devers*, 34 Ark. 188 (1879). Thus, the *Foster I* analysis answers this question. The circuit courts of this state are vested with concurrent jurisdiction to hear illegal exaction cases.

---

[2] The jurisdictional holding of *Foster I* was not an issue on rehearing.

## II. Illegal Exaction

The question then becomes whether an illegal exaction is the issue in the instant case. The taxpayers assert that they are challenging an illegal exaction under Ark. Const. art. 16, § 13 due to the failure of the school district to roll back the millage rate. This, the taxpayers contend, will result in an increase in revenues higher than 10% over 1993 revenues and, as a result, the failure of the school district to roll back taxes under Amendment 59 constitutes an illegal tax. In support of their argument, the taxpayers cite this court to *Greedup v. Franklin County*, 30 Ark. 101 (1875), a case which stands for the proposition that a levy of taxes in excess of that allowed by the constitution is illegal. The school district, on the other hand, contends that this case is more properly characterized as one charging the county with the improper collection and assessment of county taxes, and notes that Ark. Const. art. 16, § 13 was "intended to be the means by which taxpayers, generally in a collective capacity, resist *illegal* taxation." *Martin v. Couey Chrysler Plymouth, Inc.*, 308 Ark. 325, 331, 824 S.W.2d 832, 835 (1992)(emphasis in original). In sum, the school district urges that improper collection of taxes by the county in excess of constitutional limits is not an illegal tax.

The law of illegal exactions was well-summarized in *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992). In *Featherlite*, this court stated that there are only two types of illegal exactions: (1) "public funds" cases; and (2) "illegal tax" cases. The former contemplates either the misapplication of public funds or the recovery of funds wrongly paid to a public official. *See, e.g., Brewer v. Hawkins*, 241 Ark. 460, 408 S.W.2d 492 (1966). The latter requires that the tax itself be illegal. On the latter point, we said:

> It is true that we have many cases in which the collection of taxes has been enjoined under the illegal exaction provision, but all involve a tax that was itself illegal. See for example *Greedup v. Franklin County*, 30 Ark. 101 (1875), an attempt to collect a county levy in excess of the five mills allowed by the constitution; *Lyman v. Howe*, 64 Ark. 436, 42 S.W. 830 (1897), a tax based upon an assessment not made by the assessor; *Ragan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986) and *Merwin v. Fussell*, 93

Ark. 336, 124 S.W. 1021 (1910), attempts to collect taxes not properly voted by the people; *McDaniel v. Texarkana Cooperage & Mfg. Co.*, 94 Ark. 235, 126 S.W. 727 (1910), a tax levied by a county having no jurisdiction over the property; *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982) and *Waters Pierce Oil Co v. Little Rock*, 39 Ark. 412 (1882), taxes which were not authorized by the city's delegated power of taxation. However, we have always held that if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie. *Schuman v. Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950).

*Pledger v. Featherlite Precast Corp.*, 308 Ark. at 128-29, 823 S.W.2d at 855-56.

In order to refute the contention that this case involves an illegal exaction, the school district relies upon the rationale employed in three cases: *Pockrus v. Bella Vista Village Property Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994), *Scott County v. Frost*, 305 Ark. 358, 807 S.W.2d 469 (1991), and *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). The case of *McIntosh v. Southwestern Truck Sales, supra,* involved an action to enjoin the Pulaski County Collector from collecting property taxes for county purposes on nonexistent property of the taxpayer, which property was assessed and included as part of the tax bill. We held that this was clearly an improper assessment or collection case as opposed to an illegal exaction case. The same holds true of *Scott County v. Frost, supra,* a case involving equal protection and due process arguments, that arose when a reappraisal of land in Scott County could not be completed before 1990. It was stipulated that certain property owners in the county would owe property taxes for county purposes in 1990 based on the reappraised value of their property, whereas others would pay based on the old value of their property. This court held that jurisdiction was proper in county court under Ark. Const. art. 7, § 28, as opposed to circuit court, because the case concerned a matter of procedure rather than an assertion that the tax itself was illegal or unauthorized. This court noted that under Ark. Const. art. 7, § 33, the circuit court would have jurisdiction over the claim only on appeal from the county court's ruling. Neither *McIntosh v. Southwestern Truck Sales, supra,* nor *Scott County v. Frost,*

*supra,* is apposite to the case at hand since both cases clearly involved issues of improper collection of county taxes.

Finally, in *Pockrus v. Bella Vista Village Property Owners Ass'n, supra,* the Bella Vista Village Property Owners Association (Bella Vista Village) filed an action in Benton County Chancery Court seeking to enjoin the Benton County Tax Collector from collecting 1991 property taxes, resulting from a reappraisal and reassessment commenced in 1990. The reappraisal and reassessment, performed by way of a "cyclical reassessment plan," would take five years to complete. An equal protection argument was mounted over the length of time involved in the five-year reassessment since some property owners would be forced to pay under a new assessment, while others would not. The second argument was that the five-year plan violated Amendment 59 and Ark. Const. art. 16, § 14, because it did not allow for completion in one year of the reappraisal and reassessment in any of the three school districts (separate taxing units) in which Bella Vista Village property was located. The chancellor determined that the five-year plan violated Amendment 59 because the plan potentially foreclosed Bella Vista Village from receiving a rollback as contemplated by Amendment 59 due to the failure to reassess in one year.

On appeal, this court reversed and dismissed for want of jurisdiction. We noted that the ad valorem tax itself was not illegal and held that an action for illegal exaction did not lie:

> [Bella Vista Village] contends only that the reassessment and tax collection scheme . . . to collect these *legal* ad valorem taxes is unconstitutional. In other words, Bella Vista Village effectually questions only the reassessment procedure or plan employed by the county assessor and collector as being a flawed one. Because this case does not involve a void or illegal tax assessment, the chancery court was without power to hear this matter.

*Pockrus v. Bella Vista Village Property Owners Ass'n,* 316 Ark. at 472, 872 S.W.2d at 418 (emphasis in original).

In the case before us, the issue is markedly different. Here, the taxpayers do not contest the reappraisal and reassessment by the county. They contest the failure of the school district to roll back taxes, which, they contend, violates Amendment 59.

Unlike the *Pockrus* case where the issue was the constitutionality of a five-year reassessment *plan*, here the issue is the *tax* itself, which allegedly exceeds constitutional limits, because a rollback has not been accomplished by the school district. *See Greedup v. Franklin County, supra. See also Foster v. Jefferson County Quorum Court, supra.*[3] We conclude that a valid claim for an illegal exaction has been raised.

Reversed and remanded.

GLAZE, J., not participating.

CORBIN and THORNTON, JJ., concur.

Special Justice W. KELVIN WYRICK joins.

---

[3] In *Foster I*, an illegal exaction was held to exist due to a tax that exceeded constitutional limits. On rehearing, that holding was superseded solely because the court held that the constitutional limit referred only to ad valorem property taxes and, therefore, did not control a sales and use tax. Thus, the holding in *Foster I* concerning illegal exactions was not at issue on rehearing.