Joe HOYLE, Randy Stewart, Geneva Kelly, Denver Clement,
and Shelly Bruce *v.* Dianna FAUCHER, Jerry Williams, Farrell
Johnson, and Freda McMaster, in their official capacities as
Assessor, County Judge, Collector, and Treasurer for Crawford
County, Arkansas; County of Crawford, Arkansas; and Jimmie
Lou Fisher, Arkansas State Treasurer

97-1510 975 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered October 15, 1998

*Oscar Stilley*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Shirley E. Guntharp*, Deputy Att'y Gen.; and *Mike Medlock*, Prosec. Att'y, for appellees.

*The Nixon Law Firm*, by: *David G. Nixon* and *Michael D. Holland*, for *amici curiae* Richard M. Mayes, Leland S. Matlock, Frances J. Matlock, Joseph M. Hart, and Cheryl L. Hart.

*Cypert, Crouch, Clark & Harwell*, by *Charles L. Harwell* and *Marcus Van Pelt*; *Matthews, Campbell, Rhoads, McClure & Thompson*, by: *David R. Matthews*; *Rudy Moore, Jr., P.A.*; *George Spence*; and *Laser, Wilson, Bufford & Watts, P.A.*, by: *Dan F. Bufford*, for *amici curiae* Various Arkansas School Districts.

ROBERT L. BROWN, Justice. Joe Hoyle and the other appellants (Hoyle) are taxpayers in Crawford County. The appellees, Dianna Faucher and the other officials (County), are the Crawford County Assessor, County Judge, Collector, and Treasurer as well as the State Treasurer, Jimmie Lou Fisher. Hoyle raises two points on appeal: that the trial court erred in upholding Act 758 of 1995, which excludes certain reappraisals from the rollback provisions of Amendment 59, and that the trial court further was in error in dismissing Hoyle's complaint with prejudice and while discovery was pending.[1] We conclude that it was error for the trial court to find that Act 758 was constitutional and to dismiss Hoyle's complaint, and we reverse the dismissal and remand for further proceedings.

The Hoyle complaint alleged that the collection of ad valorem taxes for reappraisals and reassessments during the roughly two-year period when Act 758 of 1995 was in effect was not made in compliance with Amendment 59 of the Arkansas Constitution.[2] Amendment 59 was adopted by a vote of the people in 1980 and was designed to apply when a countywide reappraisal of real property resulted in an increase in tax revenue from each tax source within the county of more than ten percent. Act 758 was repealed by Act 836 of 1997. Hoyle contends in his complaint that Act 758 is unconstitutional, because under the Act, the General Assembly exempted those reappraisals that took two or more years to be finalized from the rollback provisions of Amendment 59. The trial court dismissed Hoyle's complaint with prejudice, finding that Hoyle had improperly pled an illegal exaction, that both Act 758 and Act 836 were constitutional on their face and as applied, that a comprehensive reassessment had not occurred in Crawford County so as to trigger Amendment 59, and that taxes voluntarily paid by Hoyle and the other appellants could not be recovered.

---

[1] While effective, Act 758 of 1995 was codified at Ark. Code Ann. § 26-26-305 (Supp. 1995).

[2] Most of Amendment 59 is now incorporated into the Arkansas Constitution as Article 16, § 14 but will be referred to as Amendment 59 throughout.

## I. Exclusion from Amendment 59

### a. Jurisdiction

Subject-matter jurisdiction is an issue which we are required to raise on our own, even when the parties do not contest jurisdiction. *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). Accordingly, we address this matter first.

The Arkansas Constitution provides that the county courts have exclusive jurisdiction in all matters relating to county taxes. Ark. Const. art. 7, § 28. But the Arkansas Constitution further provides that illegal exactions can be enjoined by a court of equity. Ark. Const. art. 16, § 13. This court has held that circuit courts have concurrent jurisdiction to declare illegal exactions. *See, e.g., Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997). Though a county ad valorem tax is clearly involved in the instant case, a complaint asserting an illegal exaction may be filed directly in either chancery or circuit court. *Foster v. Jefferson Co. Quorum Ct.*, 321 Ark. 105, 110, 901 S.W.2d 809, 811 (1995) (*Foster I*), *supp. op. granting reh'g*, 321 Ark. 116-A, 901 S.W.2d 809 (1995) (*Foster II*) (rehearing granted on other grounds). We said in *Foster I*:

> A suit to prevent the collection of an illegal or unauthorized tax is an illegal exaction suit, and subject-matter jurisdiction is concurrently in circuit and chancery court. A suit to prevent the collection of a lawful or authorized county tax that is erroneously assessed or erroneously collected is the kind of suit that belongs exclusively in county court.

*Foster I*, 321 Ark. at 110, 901 S.W.2d at 812. *See also Barker v. Frank, supra*. If an illegal tax has properly been challenged, as opposed to a challenge to assessment or collection procedures, jurisdiction of this matter is appropriate in chancery court.

### b. Illegal Exaction.

Hoyle's primary argument in this appeal is that the reliance of Crawford County officials on Act 758 and their failure to apply the rollback provisions of Amendment 59 resulted in an illegal exaction. The illegal tax alleged is that portion of the ad valorem

taxes collected pursuant to Act 758 which exceeded ten percent and which should have been subject to an Amendment 59 rollback. The County, on the other hand, urges that Hoyle is in actuality contesting a method of assessing or collecting a valid tax and directs our attention to *Pockrus v. Bella Vista Property Owners Ass'n*, 316 Ark. 468, 872 S.W.2d 416 (1994), where we held that the County Court had exclusive jurisdiction over a challenge to assessment procedures.

■■ Contrary to the County's assertion, we conclude that Hoyle adequately pled a claim for illegal exaction. This is so even though he may have proposed alternative theories of relief in his complaint. The pleading of alternative legal theories does not negate the viability of each theory pled. *Cater v. Cater*, 311 Ark. 627, 846 S.W.2d 173 (1993). The County also emphasizes, however, that at one point in his complaint, Hoyle alleged that "wholly void assessments" constituted an illegal exaction. That assertion was in error, as Hoyle's counsel admitted at oral argument. But that error does not undermine the validity of the illegal-exaction claim made which is based on the conflict between Act 758 and Amendment 59. The illegal-exaction issue that we conclude is legitimate regards that part of the ad valorem property tax paid which would not have been due and payable had Amendment 59 been applied.

This same issue came before this court in *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997). In *Barker*, a public school millage increase was at issue, and we held that that portion of the tax which exceeded constitutional limits because an Amendment 59 rollback had not been implemented constituted an illegal exaction. We said in *Barker*:

> Unlike the *Pockrus* case where the issue was the constitutionality of a five-year reassessment *plan*, here the issue is the *tax* itself, which allegedly exceeds constitutional limits, because a rollback has not been accomplished by the school district. *See Greedup v. Franklin County, supra. See also Foster v. Jefferson County Quorum Court, supra.* We conclude that a valid claim for an illegal exaction has been raised.

*Barker*, 327 Ark. at 600, 939 S.W.2d at 842. Though in the instant case, a countywide increase as opposed to a school district millage is contested, the issue is the same — the illegality of the portion of the tax which exceeds the constitutionally mandated rollback.

c. *Exemption under Act 758.*

Act 758, which was effective July 1, 1995, states in part:

> Section 3. If the review cycle of a county's cyclical review program is two or more years, then normal carrying out of such physical review program and adjustments to valuations thereunder shall not constitute a comprehensive countywide reappraisal for purposes of triggering the provisions of Arkansas Constitution, Amendment 59.

Ark. Code Ann. § 26-26-305(e) (Repealed by Act 836 of 1997). Hoyle argues that under the terms of Act 758, any county could simply conduct its reappraisal over a two-year period of time and avoid triggering Amendment 59. Further, he urges that nothing in the language of Amendment 59 gives the General Assembly the authority to exempt a class of countywide reappraisals from the amendment.

The County, on the other hand, claims that although Amendment 59 does not define what is a "countywide reappraisal or reassessment," it gives the General Assembly the authority to determine a legitimate countywide reappraisal or reassessment. This is so, according to the County, because under the terms of Amendment 59 a countywide reappraisal or reassessment must be made in accordance "with procedures established by the General Assembly." Ark. Const. art. 16, § 14. Taking it a step further, the County maintains that because the General Assembly can establish "procedures," it can also determine what procedures render a countywide reappraisal inoperable for purposes of Amendment 59.

In interpreting a provision of the Arkansas Constitution, this court has said that when the language of a provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of

interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). A "procedure" has been defined as "[t]he mode of proceeding by which a legal right is enforced . . . ." *Black's Law Dictionary* 1204 (6th Ed. 1990). Applying the plain-meaning canon of construction and the definition of "procedure" to Amendment 59, it is apparent that by enacting Act 758 the General Assembly went beyond establishing a mere procedure but, in reality, enacted an exemption from the rollback dictates of the constitutional amendment.

In support of its position that Act 758 is merely an exercise of the General Assembly's procedural power, the County cites this court to *Gazaway v. Greene County Equalization Bd.*, 314 Ark. 569, 864 S.W.2d 233 (1993). In *Gazaway*, we recognized that Ark. Code Ann. § 26-26-401 (Repl. 1994), properly sets out which reappraisals qualify for a rollback of the millage levied. Qualifying reappraisals are ones where the reappraisal is effected pursuant to a court order or a directive of the General Assembly or where it is initiated by certain county officials or by one or more taxing units under a certification or directive from the Assessment Coordination Division.

We do not agree with the County that the *Gazaway* decision controls the instant case. True, section 26-26-401 describes the correct procedure for initiating a *bona fide* reappraisal. But that is a far cry from exempting county reappraisals from the millage rollback when it takes two or more years to complete them. Yet, that is precisely what Section 3 of Act 758 does, and that is why the Act directly contravenes Amendment 59. We have no hesitancy in holding that Section 3 of Act 758 was unconstitutional while in effect, and we reverse the trial court on this point.

## II. Dismissal and Discovery

There are other points that need to be discussed. The County emphasizes that Hoyle's proposed class cannot recover taxes which were voluntarily paid, even where an illegal exaction is involved, and the trial court so held. That is certainly the settled law on this point. *See City of Little Rock v. Cash*, 277 Ark. 494,

644 S.W.2d 229 (1982). In the case at hand, however, Hoyle claims relief only for illegal real property taxes due and payable on or before October 10, 1997, which is after the date his first complaint was filed, which was March 8, 1997, though it was subsequently amended on two occasions. To the extent that taxes were paid before October 10, 1997, we held in *Cash* that taxes paid after the filing of the complaint are considered to be taxes paid under protest and, thus, not voluntary. That holding in *Cash* decides the issue in the instant case.[3]

 The trial court also concluded that Amendment 59 was not activated because personal property had not been reassessed along with real property. We question the validity of this point. Personal property is assessed every year by law. Ark. Code Ann. § 26-26-1408 (Repl. 1997). Moreover, the rollback formula set out in Amendment 59 pertains to taxes derived from taxable real property. *See* Ark. Const. art. 16, § 14(a)(i) & (ii). *See also Barker v. Frank, supra.* The trial court clearly erred in finding there was no countywide comprehensive reappraisal that would trigger Amendment 59.

Nor do we view this as an Equal Protection case, as the County would have it, where Act 758 can be sustained if the resulting classification is supported by a rational basis. This is an illegal-exaction case where we hold that that portion of the tax levied without the Amendment 59 rollback is unlawful.

Finally, we are cognizant of the fact that the General Assembly subsequently became well aware of its mistake in enacting Act 758. In the Emergency Clause to Act 836 of 1997, which repealed Act 758 and was effective March 26, 1997, the General Assembly observed "that Act 758 of 1995 has placed an unfair burden on the taxpayers of the State of Arkansas by directing countywide reappraisals of property in a manner which circum-

---

[3] We note that at oral argument Hoyle's counsel stated that he was asking for a rollback of the tax millage for all taxing units in Crawford County. Hoyle, however, did not sue other taxing units such as school district boards but limited himself to Crawford County. As a result, the other taxing units in Crawford County are not before this court at this time, and we make no decision as to whether taxes paid to those taxing units since the filing of the Hoyle complaint were paid voluntarily.

vents the rollback provisions of Amendment 59 . . . ." While this statement surely does not decide the constitutional issue before us, it is indicative of the General Assembly's recognition of the abiding conflict between Act 758 and Amendment 59.

We reverse the trial court's order dismissing Hoyle's complaint for failure to state a claim upon which relief can be granted, and we remand the matter for further proceedings. Because we are reversing the dismissal order and remanding, Hoyle's issues concerning dismissal with prejudice and additional discovery are moot.

Reversed and remanded.

CHUCK BANKS and RICHARD PROCTOR, Sp. JJ., join in this opinion.

LEON HOLMES, Sp. J., concurs.

THORNTON, J., dissents.

GLAZE, CORBIN, and IMBER, JJ., not participating.

LEON HOLMES, Special Justice, concurring. I join in the opinion written by Mr. Justice Brown for the Court. I write separately to say that I would overrule *Pockrus v. Bella Vista Village Property Owners Association*, 316 Ark. 468, 872 S.W.2d 416 (1994), which is inconsistent with the decision in this case and with the decision in *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997).

We hold today that the levy of a tax in excess of the millage rate allowed by Amendment 59 is an illegal exaction that may be enjoined in chancery court pursuant to Ark. Const. art. 16, § 13. At least since *Greedup v. Franklin County*, 30 Ark. 101 (1875), this Court has held that the levy of a tax in excess of the millage rate allowed by the Constitution is an illegal exaction, and that taxpayers are entitled to sue in chancery court to enjoin the illegal exaction "to prevent a multiplicity of suits." 30 Ark. at 110. A complaint to enjoin the levy of a tax on the ground that the millage rate exceeds a constitution limit alleges an illegal exaction and may be brought either in circuit court or in chancery court. *Barker v. Frank, supra.*

In *Pockrus*, this Court followed a line of cases holding that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal. So far as I can determine, that language originated in *Schuman v. Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950). *Schuman* involved mineral taxes that were admittedly due and owing; they were not in any way, shape, form or fashion illegal. The complaint in *Schuman* was that the procedure for recording the assessments on the mineral taxes did not conform to the statutory procedure and, as a result, "these taxes were so extended on the taxbooks that the property owners would encounter difficulty in attempting in good faith to discharge their debt to the State and county." In a nutshell, the *Schuman* complaint was that the manner of recording the taxes on the tax books was unduly confusing. In that context, this Court stated, "But the debt nevertheless exists, and our decisions do not support the theory that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, makes the exaction itself illegal." 218 Ark. at 48-49. This statement in *Schuman* was supported by citations to *Missouri Pacific Railroad Company v. Fish*, 181 Ark. 863, 28 S.W.2d 333 (1930), and *Beard v. Wilcockson*, 184 Ark. 349, 42 S.W.2d 557 (1931). *Missouri Pacific Railroad Company v. Fish*, so far as I can tell, has nothing to do with a flaw in an assessment or collection procedure. *Beard v. Wilcockson* held that an overstatement in the assessed value does not create an illegal exaction, and that a taxpayer whose property is over-valued must follow the statutory remedies. Neither *Schuman* nor *Beard*, nor the cases descending from *Schuman*, support the holding in *Pockrus* that an Amendment 59 case is not an illegal-exaction case.

Amendment 59 created the opportunity for confusion between the line of cases descending from *Greedup v. Franklin County* and the line of cases descending from *Schuman v. Ouachita County*. *Greedup* held that the levy of a tax in excess of the millage rate allowed by the constitutional limit is an illegal exaction, while *Schuman v. Ouachita County* held that a flaw in the assessment or collection procedure is not an illegal exaction. Confusion has

arisen because Amendment 59 creates a constitutional limit on the millage rate that a local taxing unit may impose, and defines this limit on the millage rate in terms of a formula that is tied to assessment procedures. However, the substance of a claim under Amendment 59 is that a taxing unit has levied a tax in excess of the allowed millage rate. Pleading the facts as to what the taxing unit has done sometimes will necessitate allegations regarding the assessment procedures (as here and in *Pockrus*), but the relief sought ultimately is to obtain compliance with the millage rate limitation. Thus, a complaint alleging a violation of Amendment 59 falls within the rule of *Greedup v. Franklin County*; it is a complaint alleging that a taxing unit is levying taxes based on a millage rate that exceeds the constitutional limit, which is an illegal exaction. Such a case may be brought either in chancery court or in circuit court. Such a case is not within the *Schuman* rule because the taxpayer denies that "the debt nevertheless exists" [*Schuman*, 218 Ark. at 48] to the extent the millage rate exceeds the Amendment 59 limitation.

In *Pockrus*, the court quoted from the chancellor's opinion stating that Amendment 59 provided for a safeguard that under the circumstances specified in the Amendment would require each taxing unit to roll back the millage levied against the property within its taxing jurisdiction. *See* 316 Ark. at 471. The court then summarized the chancellor's holding by saying that he had concluded that the reassessment plan "violated Amendment 59 because it prevented Bella Vista Village taxpayers from receiving the benefits of equalization of taxes (roll back in taxes) provided for and allowed under the Amendment." *Id.* Thus, in *Pockrus* the chancellor held that Bella Vista taxpayers were being taxed in excess of the limit provided in Amendment 59 because the local taxing units had not rolled back the millage rate in accordance with that Amendment. Even though the taxpayers in *Pockrus* complained that the effect of reassessment plan was to avoid the impact of Amendment 59, as the taxpayers do in this case, the gist of the complaint was that the millage rate exceeded the limit imposed by Amendment 59. Such a case is an illegal-exaction

case. *Pockrus* is the only decision that has ever relegated an Amendment 59 case to county court.

Justice Hickman's Godzilla[1] is enough of a terror to litigants, their lawyers, and trial judges without the confusion created by irreconcilable opinions from this Court as the court of original jurisdiction for Godzilla's cases. I doubt the county judges want Godzilla in their courts; I am certain he does not belong there.

RAY THORNTON, Justice, dissenting. Amendment 59 states, in pertinent part:

> Whenever a *countywide* reappraisal or reassessment of *property subject to ad valorem taxes* made in accordance with procedures established by the General Assembly shall result in an increase in the *aggregate value of taxable real and personal property* in any taxing unit in this state of ten percent (10%) or more over the previous year the rate of city or town, county, school district, and community college district taxes levied against the *taxable real and personal property* of such taxing unit shall, upon completion of such reappraisal or reassessment, be adjusted or rolled back, by the governing body of the taxing unit, for the year for which levied as provided below.

Ark. Const. art. 16, § 14(a) (emphasis added). The clear language of Amendment 59 provides that the rollback provision is triggered by a countywide reappraisal of real and personal property, which increases the assessed value of *all property* in the county by more than ten percent above the assessed value for the base year. I cannot agree that a reassessment of less than twenty-five percent of the taxable *real* property in the county, having the effect of an unknown percentage increase in the assessed value of all real and personal property, transforms a properly voted and completely legal ad valorem tax into an "illegal exaction." Perhaps that result reflects the spirit of Amendment 59, but the determination that a legal tax has been converted into an illegal exaction should rest on

---

[1] *See Clark v. Union Pacific R. Co.*, 294 Ark. 586, 745 S.W.2d 600 (1988) (HICKMAN, J. concurring) ("Amendment 59 is the 'Godzilla' of constitutional amendments. Nobody knows what it means.")

words and principles articulated in Amendment 59, rather than on an interpretation of a legislative act that erroneously sought to establish procedures for implementation of Amendment 59.

The flaws that the majority recognizes in Act 758 of 1995, which attempted to spread the process of reappraisal over a five-year period, certainly should require that a trial court adjust tax rates so as not to violate the terms of Amendment 59. However, that conclusion does not require us to stretch the language of our constitution to invalidate legislative efforts aimed at equalizing and making fair the valuation of real and personal property within a county or on a statewide reappraisal.

On the merits, I agree with the majority that Act 758 was inartfully drawn, and that it could not be given effect as a limitation upon the required rollback of taxes under Amendment 59. What is missing from the majority's opinion is an analysis as to whether the rollback provisions of Amendment 59 are self-executing, and what theory of construction do they apply to a partial reassessment of less than twenty-five percent of the real property in a governmental unit. I would remand the case to the trial court for such a review and for such relief as may be appropriate, but I cannot join in a declaration that a legal ad valorem tax may be transformed, by flaws in a legislative attempt to establish reassessment procedures, into an illegal exaction.

I respectfully dissent.