Henry FRANK and James Christopher, *et al. v.*
Roger BARKER, *et al.*

99-669                                    20 S.W.3d 293

Supreme Court of Arkansas
Opinion delivered June 8, 2000

*Harold Erwin*, Judge;

*Laser, Wilson, Bufford & Watts, P.A.* and *Nichols & Campbell, P.A.*, for appellants.

The Evans Law Firm, P.A., by: *Marshall Dale Evans*, and *Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, for appellees.

*Farrar, Reis, Rowe, Nicolosi & Williams*, by: *Bryan J. Reis*, for appellants James Christopher *et al.*

RAY THORNTON, Justice. Appellants are members of the Board of Fountain Lake School District, the County Clerk of Saline County, the County Collector of Saline County, and the County Assessor of Saline County. James Christopher, a taxpayer in the Fountain Lake School District, and a resident of Garland County, is also an appellant seeking intervention for himself and all others similarly situated. Appellees, taxpayers in the Fountain Lake School District, reside in Saline County and in the Fountain Lake School District, which includes part of Saline County and part of Garland County.

On November 28, 1994, appellees filed a complaint against the Fountain Lake School District and Saline County officials alleging that in July 1993, the State Assessment Coordination Division advised the Saline County Judge that the preliminary ratio of the assessed value of real property to actual value of the real property had fallen below eighteen percent and that the state turnback funds to the county were in jeopardy. To cure this problem, reappraisal of land located in Saline County was suggested, and a reappraisal was done. In August 1994, the Saline County Equalization Board received the results of the reappraisal of property in Saline County, which showed that the aggregate value of such taxable real property within the school district for 1994 had increased 28.8 percent over that in 1993.

At the core of appellees' complaint is their assertion that the collection of the 1994 school district tax constitutes an illegal exaction because the school district stands to receive revenues exceeding by more than ten percent those received in 1993. Appellees assert that the school district must roll back its rate of taxation under Amendment 59 to prevent tax revenues from increasing more than ten percent above the base year and that if such rollback does not occur, the tax is an illegal exaction. Appellees further complain that a number of statutory tasks related to the reassessment of property have not been performed by the school district and by Saline County public officials.

The complaint sought a writ of mandamus (1) to the Saline County Clerk, requiring him to perform his duties, and (2) to the school district to complete the rollback form and roll back its tax rate pursuant to Amendment 59. Appellees further sought a writ of prohibition to prevent the collection of 1994 real property taxes in

violation of Amendment 59. Next, appellees prayed for judgment declaring the collection of 1994 real property taxes in the school district without a rollback would constitute an illegal exaction under Amendment 59 in that revenue collected in 1994 would be more than ten percent above revenues collected in 1993. Finally, they sought to enjoin appellees from further violations of Amendment 59.

The school district moved to dismiss appellees' complaint for lack of subject-matter jurisdiction. The Saline County Clerk and Collector made similar motions, and asserted that the appellees' claims were required to be brought in county court because they involved county taxes. Appellees replied that the taxes at issue were school district taxes as opposed to county taxes, and that the circuit court was the appropriate forum. They further referred to their prayers for mandamus and prohibition, remedies that typically lie in circuit court.

After a hearing on the motions to dismiss, the trial court found that the school district tax was a county tax, and that under *Foster v. Jefferson County Quorum Court,* 321 Ark. 105, 901 S.W.2d 809 (1995), *supp. op. granting reh'g,* 321 Ark. 116-A, 901 S.W.2d 815 (1995), jurisdiction was vested exclusively in county court. The trial court also concluded that the matters more appropriately lie in chancery court as opposed to circuit court because injunctive relief was sought. The trial court finally stated that it would dismiss the case without prejudice so that appellees could file in either chancery or county court, or appeal the matter. An order of dismissal was entered.

The case was appealed to us, and we issued an opinion on March 17, 1997[1]. On appeal, we reversed the trial court and held that school district taxes are not county taxes, and, for that reason, exclusive jurisdiction does not lie in county court. We further held that appellee had asserted a valid claim for an illegal exaction pursuant to Ark. Const. art. 16, § 13. The case was reversed and remanded.

On remand, appellees amended their complaint to include tax years after 1994 and requested that the defined class of taxpayers be

---

[1] *See Barker v. Frank,* 327 Ark. 589, 939 S.W.2d 837 (1997)

restricted to only those taxpayers of the school district who reside in Saline County. The school district appellants contended that the class must include all taxpayers residing in the school district and on January 6, 1999, a hearing was held on the matter. On February 5, 1999, James Christopher, a taxpayer resident of the Fountain Lake School District who resides in Garland County filed a motion to intervene. Following a hearing, the trial court issued an order certifying a class action and restricting the members of the class to those school district taxpayers with real property in Saline County. This order was entered on February 18, 1999. In an order entered March 3, 1999, James Christopher's motion to intervene was denied.

On appeal, the trial court's class-certification order is challenged as well as the denial of appellant James Christopher's motion to intervene. We reverse and remand.

At the outset, we note that this case involves a class action resulting from Ark. Const. art. 16, § 13, which states:

> Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.

*Id.*

In their point on appeal, appellants contend that the trial court erred when it failed to include within the class the school district taxpayers who reside in Garland County. Appellees respond to this contention by arguing that, because Garland County has not conducted a reappraisal, Amendment 59's rollback provisions are not triggered and therefore the school district taxpayers who reside in Garland County have not been subjected to an illegal exaction and are not entitled to membership in the class.

■ We have recognized that our common law makes an illegal-exaction suit under Article 16, section 13, of the Arkansas Constitution a class action as a matter of law. *Carson v. Weiss*, 333 Ark. 561, 972 S.W.2d 933 (1998). We have also held that Rule 23 of the Arkansas Rules of Civil Procedure does not govern the class action brought into existence by the constitutional illegal-exaction provision; rather, it may serve as a rule of procedure in a class-action case of this nature. *Id.*

Remaining mindful of this principle, we turn to the case now on review. In this case, the taxpayers in the Fountain Lake School District claim an illegal exaction pursuant to Amendment 59. Amendment 59 in part states:

> (a) Whenever a countywide reappraisal or reassessment of property subject to ad valorem taxes made in accordance with procedures established by the General Assembly shall result in an increase in the aggregate value of taxable real and personal property in *any taxing unit* in this State of ten percent (10%) or more over the previous year *the rate* of city or town, county, school district, and community college district taxes levied against the taxable real and personal property of *each such taxing unit* shall, upon completion of such reappraisal or reassessment, be adjusted or rolled back, by *the governing body* of *the taxing unit*, for the year for which levied as provided below. . .

Ark. Const. art. 16, § 14 (emphasis added).

■ To determine whether the trial court erred in excluding school district taxpayers residing in Garland County from the class it is necessary to interpret Amendment 59. As we interpret a provision of the Arkansas Constitution, we have said that when the language of a provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998).

■ Looking to the plain language of Amendment 59, it is clear that a "taxing unit," as it is used in the amendment, and as it applies to this case, refers to the "school district." We note that long before Amendment 59 was adopted school districts were formed that included parts of more than one county. To facilitate the formation of such school districts, and for other purposes, the people of the State of Arkansas adopted Initiated Act Number 1 of 1948. In light of the existence of districts spanning two or more counties, it is instructive that the drafters of Amendment 59 did not choose to differentiate between a school district located in only one county from a school district spanning two or more counties. The amendment did not provide a different treatment for such "fringe districts," but without exception it referred to all school districts, including those in more than one county, as "taxing units."

■ Based on the plain meaning of the language in Amendment 59, we conclude that the Fountain Lake School District includes all taxpayers in the district, whether they reside in Saline County or Garland County. We note that in order to determine whether a rollback is required in the "taxing unit" it is necessary to include "*all others interested,* to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." The phrase "all others interested" certainly includes all taxpayers within the school district which is the "taxing unit."

■ Additionally, we note that the plain language of the amendment, when referring to the rollback, which the taxpayers in the taxing unit may be entitled to, refers to "the rate" of school district taxes levied against the taxable real and personal property in the school district being adjusted or rolled back. This language from the amendment does not grant any authority for a single taxing unit to impose various taxing rates. Instead it allows for a rollback when the whole taxing unit has been subjected to a ten percent increase in taxable real and personal property in a single year. Furthermore, the rollback of "the rate" is done by the "governing body of the taxing unit;" that is, by the board of the school district. We also note that any rollback of the rate of taxation must be uniform. The Arkansas Constitution in article 16, § 5 provides in part:

> all real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property for which a tax may be collected shall be taxed higher than another species of property of equal value. ...

*Id.* Pursuant to this constitutional language, it is clear that one uniform rate of taxation must be applied to property of equal value throughout the school district, which is the taxing unit. Additionally, we note that all members of the class share a common interest in the fair and uniform distribution of any rollback by a uniform reduction in the rate of taxation throughout the taxing unit. The dissent urges that the constitutional requirement of a uniform rate of taxation within a taxing unit has been overturned by the legislative enactment of Act 848 of 1981 partially codified at Ark. Code Ann. § 26-26-408 (Repl. 1997). However, we find no authority to support the proposition that a statutory provision overrides a constitutional principle.

■ Accordingly, we hold that the trial court's order, which excluded taxpayers in Fountain Lake School District residing in Garland County from the class action, was erroneous. Therefore, we reverse the trial court's order and remand the case to allow the trial court to include the Garland County residents of the Fountain Lake School District as members of the class arising as a matter of law from the illegal-exaction suit.

■ Appellant James Christopher, a taxpayer and resident of Fountain Lake School District, who resides in Garland County, in his separate point on appeal, argues that the trial court erred when it denied his motion to intervene. In response, appellees argue that Mr. Christopher's motion to intervene was not filed in a timely manner. Because we have concluded that all taxpayers residing in the school district are included in the class arising as a matter of law from the illegal-exaction suit, it appears that Mr. Christopher and others similarly situated are members of the constitutionally established class. Because the attorneys for those taxpayers who reside in Saline County have vigorously argued that the taxpayers of the Fountain Lake School District that reside in Garland County should not be included in the class, we note that it may be appropriate for the trial court to appoint another attorney to ensure that the interests of those taxpayers are adequately protected.

Reversed and remanded.

GLAZE, J., not participating.

Special Associate Justice KELVIN WYRICK joins.

CORBIN and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. Amendment 59 has sometimes been referred to as the "Godzilla" of constitutional amendments. The confusion created by the passage of this amendment persists still today, and now the majority's opinion ignores the one element of the amendment that has been interpreted in a consistent manner. Heretofore, this court has consistently held that the rollback provision of Amendment 59 is triggered *only* when there has been a countywide reappraisal resulting in an increase in the aggregate value of taxable real and personal property in excess of ten percent or more over the previous year. *See Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000);

*Hoyle v. Faucher,* 334 Ark. 529, 975 S.W.2d 843 (1998); *Gazaway v. Greene County Equalization Bd.,* 314 Ark. 569, 864 S.W.2d 233 (1993); *Clark v. Union Pac. R.R. Co.,* 294 Ark. 586, 745 S.W.2d 600 (1988). Ignoring this well-established rule of law, the majority has determined that the residents of Garland County are entitled to be members of a class, even though they make no allegations that they have been subjected to a countywide reappraisal.

The majority's holding in this case is contrary to both the provisions of Amendment 59, as well as to this court's prior case law. It results from a strained interpretation of the language of Amendment 59 and select constitutional provisions. By analyzing certain words and phrases in isolation, instead of in the context in which they are used, the majority reaches a conclusion that under-mines the purpose of Amendment 59. The main example of this faulty analysis is found in the majority's interpretation of the provi-sions of Amendment 59 itself. The majority opines that Amend-ment 59 does not provide for differing treatment of fringe school districts, nor does the Amendment provide for a taxing unit, here the school district, to impose varying tax rates. This conclusion wholly ignores a statutory provision enacted by the General Assem-bly, pursuant to Act 848 of 1981, as part of the implementing legislation for Amendment 59. The procedures governing rollbacks in fringe school districts are codified at Ark. Code Ann. § 26-26-408 (Repl. 1997). This section provides:

> (a) For purposes of this section, the term "fringe school districts" means those school districts whose boundaries extend across one (1) or more county lines.

> (b) When there is a statewide or countywide reappraisal of property for ad valorem tax purposes pursuant to court order or pursuant to law enacted by the General Assembly, the millage rollback for fringe school districts will be implemented as follows: *That part of the school district in a county reappraised first will be rolled back in accordance with procedures prescribed in this subchapter, and taxes will be levied at that millage rate until such time as a similar reappraisal is completed in the other counties in which the school district lies* and the millage in those counties is rolled back in accordance with this subchapter at which time the rolled back millage for the first part of the school district that has been reappraised and the rolled back millage for each succeeding part of the school district that has been reappraised shall be averaged, weighted by the percentage of the

total assessment of the school district that each part consists of in order to create a weighted average millage, and thereafter the weighted average millage for the school district will be the millage rate levied in the whole school district. [Emphasis added.]

Seemingly oblivious to this provision, the majority states that it is instructive that the drafters of Amendment 59 did not choose to differentiate between school districts located in one county and school districts spanning two counties. It is ludicrous to assume that simply because the text of the Amendment does not specifically address fringe school districts that they must automatically be governed by the same taxing procedures as school districts located wholly in one county. In fact, the emergency clause of Act 848 states in relevant part:

[T]hat Amendment 59 requires enactment of legislation to implement the provisions thereof and that this Act provides such implementation and should be given effect immediately to accomplish the purposes of Amendment 59 in an orderly, effective and efficient manner.

The existence of these fringe school districts obviously creates unique problems with regard to the rollback of taxes, as evidenced by this case. Mindful of this fact, the General Assembly established procedures that would solve the problem caused when only one county completes a reassessment. It is curious, though, that the majority has chosen to ignore section 26-26-408 in light of its obvious applicability to the present situation.

The majority also opines that Amendment 59 allows for a rollback when the whole taxing unit has been subjected to a ten percent increase in taxable real and personal property in a single year. The majority, however, ignores the following additional language found in Amendment 59:

The adjustment or rollback of tax rates or millage for the "base year" as hereinafter defined shall be· designed to assure that each taxing unit will receive an amount of tax revenue from each *tax source* no greater than ten percent (10%) above the revenues received during the previous year from each such *tax source* .... [Emphasis added.]

Even though Amendment 59 initially discusses an increase in the value of taxable property in terms of the "taxing unit," the above-

quoted language indicates that the rollback is to occur when a taxing unit receives increased revenue from a particular tax source. Here, the taxing unit, the Fountain Lake School District, received a 28.8% increase in its tax revenue from that *tax source* made up of district residents residing in Saline County. Under the plain language of Amendment 59, a rollback of taxes was designed to prevent the Fountain Lake School District from receiving the entire 28.8% increase from the Saline County residents. The majority goes a step further, however, and erroneously concludes that members of the taxing unit that have not contributed to the increased revenue, *i.e.*, Garland County residents, must be allowed to share in any rollback of taxes simply by virtue of the fact that they were fortunate enough to reside in that particular taxing unit. Clearly, such a result was not intended by the drafters of Amendment 59.

In another attempt to validate its erroneous conclusion in this matter, the majority relies on Article 16, § 5, of the Arkansas Constitution for the proposition that the school district must apply a uniform rate of taxation throughout the school district. While I do not necessarily agree with the majority that Article 16, § 5, clearly stands for such a proposition, I do not wish to debate the issue because the more pressing problem with the majority's analysis is the fact that the majority is allowing a group of people with no cause of action against any of the defendants be certified as members of this class.

The majority states that the Garland County residents are interested parties simply because they reside in the taxing unit. In so holding, the majority is effectively undermining the purpose of Article 16, § 13, of the Arkansas Constitution. Section 13 provides that any citizen may file suit on his behalf and all others interested *to protect against the enforcement of any illegal exactions.* The majority concludes that the residents of Garland County are "interested parties" simply because they reside in the school district, not because they require protection from the enforcement of an illegal tax. On the contrary, the residents of Garland County make no allegations that they have been subjected to any type of illegal exaction. I am mindful of the fact that this court has stated that class actions filed pursuant to Article 16, § 13, arise as a matter of law, but I am certainly unaware of any instance when this court has allowed a party with no cause of action to proceed. Even in light of this court's liberal interpretation of "interested parties" it is nonsen-

sical to conclude that the Garland County residents have any interest at this stage of the proceedings.

This court has previously distinguished between the two types of illegal-exaction claims that may arise under Article 16, § 13: public-funds cases and illegal-tax cases. *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). In a suit involving an illegal tax, as is the situation here, the plaintiff asserts that the tax itself is illegal or contrary to a constitutional or statutory provision. *Id.* Here, the allegation that the tax is illegal stems from the fact that there was a countywide reappraisal with no subsequent rollback. Clearly, under Article 16, § 13, "interested parties" are those citizens subjected to an illegal exaction. Because the Garland County citizens make no allegation that they have been subjected to any illegal exaction, I believe that they are not interested parties within the meaning of Article 16, § 13. Therefore, they lack standing in the present matter and should not be allowed into this class.

Essentially, the majority is creating a cause of action for the Garland County residents where one does not exist. Acting pursuant to a directive in Amendment 59 that they establish procedures governing the rollback of taxes, the General Assembly provided a method for effectuating a rollback in fringe school districts. In light of this provision, it is clear that the proper course of action in the present matter is to leave the class as it is, made up of those district residents subjected to a countywide reappraisal, and allow them to proceed with their claim for an illegal exaction. If the class prevails, and the school district then rolls back the millage rate for only those district members residing in Saline County, then the Garland County residents may assert their own claim that they are being taxed at a differing rate in violation of Article 16, § 5. As it stands now, the Garland County residents do not have a cause of action and should not be allowed to join this class. Allowing the residents of Garland County to join this suit will result in nothing more than the addition of superfluous parties and confusion of the facts and issues at the trial level.

For the foregoing reasons, I respectfully dissent.

BROWN, J., joins.

ROBERT L. BROWN, Justice, dissenting. I agree completely with Justice Corbin's dissenting opinion that the major-

ity has engaged in a tortured and illogical reading of Amendment 59 (Art. 16 §§ 14, 15, and 16 of the Arkansas Constitution). That amendment, without question, deals with *countywide* reappraisals and the effect of such reappraisals on taxing units within the county. There is nothing in the amendment to suggest otherwise. A countywide reappraisal has only occurred in Saline County. To read the amendment as embracing residents of a taxing unit who live in a different county runs counter to the clear language of the amendment.

The General Assembly enacted Act 848 of 1981, now codified at Ark. Code Ann. § 26-26-408 (Repl. 1997), to deal with the situation of millage rollbacks in fringe taxing units and how to tax residents of different counties. The majority, without saying so, has effectively ruled that statute unconstitutional by its interpretation of Amendment 59 to mean that a rollback of rates based on a county-wide reappraisal in one county applies to residents of a different county who live in the same taxing unit. If a statute which has been on the books for twenty years is to be placed in constitutional limbo, that issue should at least be addressed by this court.

The majority is also wrong in stating that the class representatives amended their complaint following our decision in *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997) (*Barker I*), and "restricted" the defined class to taxpayers in the school district in Saline County. That language indicates that Garland County residents were originally part of the class of taxpayers. That was not the case, however. According to the style of *Barker I*, the action was brought on behalf of all citizens, residents, taxpayers, inhabitants, and owners of real property in the school district *in Saline County*. In the body of the opinion, the "taxpayers" were only persons who owned land in Saline County. And, again, Saline County is where the countywide reappraisal occurred. Prior pleadings in the record never suggested that Garland County taxpayers were involved, for obvious reasons.

Should there be a discrepancy in the taxes paid between Garland County and Saline County residents of the school district, that may be stuff for later litigation. But that is no reason to give a twisted reading to Amendment 59. The majority opinion adds to our woes by reading language into Amendment 59 that is simply not there. I respectfully dissent.