Mike BEEBE, Attorney General, and Steve Oliver, Prosecuting Attorney *v.* FOUNTAIN LAKE SCHOOL DISTRICT, Laurence B. Adkins, Eleanora P. Barker, Henry Frank, Malcolm McDonald, and Patricia McDonald

05-508                                         231 S.W.3d 628

Supreme Court of Arkansas
Opinion delivered March 9, 2006

---

*Mike Beebe*, Att'y Gen., by: *Timothy G. Gauger*, Sr. Ass't Att'y Gen., and *Colette D. Honorable*, Ass't Att'y Gen., for appellants.

*Nichols & Campbell, P.A.*, by: *Mark W. Nichols*, for appellee Fountain Lake School District.

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans*; *Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, for appellees Laurence B. Adkins, Eleanora P. Barker; Henry Frank, Malcolm MacDonald and Patricia MacDonald.

JIM GUNTER, Justice. This appeal arises from a consolidated action including our prior appeal of *Barker v. Frank*, Saline County Circuit No. 94-719-2, an Amendment 59 illegal-exaction case filed in Saline County, and *Fountain Lake School District v. Adkins*, Garland County Circuit No. CV-2003-1272-II, a declaratory-judgment action filed in Garland County. The circuit court dismissed this consolidated action on the basis of res judicata. We reverse the circuit court's rulings and remand for further proceedings consistent with this opinion.

A full recitation of the facts is articulated in our two prior appeals, *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997) (*Barker I*), and *Frank v. Barker*, 341 Ark. 577, 20 S.W.3d 293 (2000) (*Barker II*). In *Barker I*, appellants were Roger Barker, Patty McDonald, and Malcolm McDonald, three taxpayers who owned real property in Saline County and resided in the Fountain Lake School District ("Fountain Lake"), which includes portions of Saline County and Garland County. Appellees were members of the Fountain Lake School District Board, the Saline County Clerk, and the Saline County Collector. On November 28, 1994, the

taxpayers filed a complaint against Fountain Lake School District and Saline County officials, alleging that, in July 1993, the State Assessment Coordination Division advised the Saline County Judge that the preliminary ratio of the assessed value of real property to the actual value of the real property had fallen below eighteen percent and that the state turnback funds to the county were in jeopardy. The taxpayers suggested a reappraisal of the land located in Saline County, and a reappraisal was done. The results of the reappraisal showed that the aggregate value of taxable real property in Fountain Lake for 1994 had increased 28.8% from the value in 1993.

The taxpayers in *Barker I* averred in their complaint that the 1994 collection of the school-district tax constituted an illegal exaction because the school district stood to receive revenues exceeding those revenues in 1993 by more than ten percent, in violation of Amendment 59 of the Arkansas Constitution. In their complaint, the taxpayers asserted that the school district must roll back its rate of taxation under Amendment 59 to prevent tax revenues from increasing more than ten percent above the base year, and that if such a rollback did not occur, the tax was an illegal exaction.

In *Barker I*, the taxpayers sought a writ of mandamus, a writ of prohibition, and injunctive relief. Fountain Lake, the Saline County Clerk, and the Saline County Collector moved to dismiss the taxpayers' complaint for lack of subject-matter jurisdiction, asserting that the taxpayers' claims were required to be brought in county court because the action involved county taxes. After a hearing on Fountain Lake's motion to dismiss, the trial court found that the school district tax was a county tax, and that under *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 901 S.W.2d 809 (1995), *supp. op. granting reh'g*, 321 Ark. 116-A, 901 S.W.2d 815 (1995), jurisdiction was vested exclusively with the county court. The circuit court dismissed without prejudice to allow the taxpayers to file in either chancery or circuit court. On appeal, we reversed and remanded, holding that Fountain Lake taxes were not county taxes, and, for that reason, exclusive jurisdiction did not lie with the county court. *Barker I*, 327 Ark. at 596, 939 S.W.2d at 840. We further held that the taxpayers asserted a valid claim for an illegal exaction pursuant to Ark. Const. art. 16, § 13. *Barker I*, 327 Ark. at 600, 939 S.W.2d at 842.

Upon remand, the taxpayers amended their complaint to include tax years after 1994 and requested that the class of

taxpayers be restricted to those Fountain Lake taxpayers residing in Saline County. Fountain Lake contended that the class must include all taxpayers residing in the school district. The trial court issued an order certifying a class action and restricted the members of the class to those school-district taxpayers residing in Saline County. On appeal, we reversed and remanded, holding that, under the plain meaning of the language in Amendment 59, the school district included all taxpayers in the district, whether they reside in Saline County or Garland County. *Barker II*, 341 Ark. at 583, 20 S.W.3d at 296-97. We remanded the case to allow the trial court to include the Garland County residents of the school district as members of the class. *Id.* at 584, 20 S.W.3d at 297.

On November 21, 2002, we issued our decision in *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), where we interpreted the language of Amendment 74:

> The wording of Amendment 74 makes it abundantly clear that each school district is responsible for assessing a uniform rate of 25 mills for maintenance-and-operation purposes. If a school district already has in effect millages for maintenance and operation, those millages may be counted against the uniform rate of 25 mills required by Amendment 74. Nowhere, however, does Amendment 74 provide that part of a millage adopted by the school district for an entirely different purpose may be subtracted from the 25 mills owed. The General Assembly's legislation permitting excess debt service millage is clearly contrary to the plain meaning of Amendment 74.

*Lake View*, 351 Ark. 31, 89, 91 S.W.3d 472, 506 (2002). We noted that giving the General Assembly the authority to define what expenses are included within the term "maintenance and operation," however, did not empower that body to change the uniform millage rate or alter the funds required to be sent to the State under Amendment 74. *Lake View*, 351 Ark. 31, 89, 91 S.W.3d 472, 506 (2002). Further, we stated that "[c]rediting excess debt service millage against the 25 mill obligation is not contemplated by Amendment 74." *Lake View*, 351 Ark. at 87, 91 S.W.3d at 505.

Two months after our *Lakeview* decision, on January 27, 2003, the *Barker* litigation (hereinafter "*Barker v. Frank*") was settled by stipulation with approval of the court, and plaintiffs agreed to a temporary millage reduction from 31 mills to 30.25 mills in the school district for the years 2003, 2004, and 2005. An

order to that effect was entered on April 11, 2003. According to representations made during oral argument, Fountain Lake's existing millage structure established the following allotment of the 30.25 mills: 10.8 mills to debt service, 2.0 mills for capital outlay, and the remaining 17.45 mills for maintenance and operation of the school. Fountain Lake's school board placed a proposition before its voters to comply with Amendment 74 of the Arkansas Constitution, but at the 2003 annual school election, the proposition was defeated.

On December 16, 2003, a complaint for declaratory relief was filed by Fountain Lake against the members of the Garland County Quorum Court, Garland County Tax Collector, Garland County Prosecuting Attorney, Saline County Quorum Court, Saline County Tax Collector, Saline County Prosecutor, and the Attorney General in their official capacities. In its complaint, Fountain Lake averred that, according to the terms of the settlement, it would not be in compliance with Amendment 74 during 2003 because it would not have the requisite twenty-five mills levied solely for maintenance and operation of the schools. Fountain Lake prayed for declaratory relief directing an additional levy of 7.55 mills to be implemented by the Garland County and Saline County Quorum Courts for the tax year of 2003. State Defendants answered on January 6, 2004.

The circuit court entered an order on February 2, 2004, ruling that "it is in the best interest of the parties to direct the Saline County and Garland County Defendants to assess and collect a millage rate of 37.8 mills for all real and personal property located within the respective counties for the tax year of 2003[.]" The circuit court ordered the Saline County and Garland County defendants to retain 7.55 mills in an escrow account under the supervision of the court to be distributed per the court's order at a later date.

On February 17, 2004, Fountain Lake filed a motion for partial summary judgment to resolve the question of whether the order entered in *Barker v. Frank* concerning Amendment 59 excused Fountain Lake from complying with the express requirements of Amendment 74 to the Arkansas Constitution. Fountain Lake argued that, in order to comply with Amendment 74, its millage must be 37.8 mills with twenty-five mills pledged to maintenance and operation of schools, 10.8 mills pledged to debt service, and two mills dedicated to capital outlay.

Appellees Patricia and Malcolm McDonald ("Intervenors"), as taxpayers and parties to the stipulation of settlement, filed a complaint in intervention on March 5, 2004. In their complaint, they averred that "the plaintiffs have made an inappropriate collateral attack on a Stipulation of Settlement in this court by claiming that the Stipulation of Settlement violates Amendment 74." They sought a judgment declaring that the stipulation of settlement was enforceable as written, that the parties to the settlement were bound to it, that the parties to the agreement take no contradictory legal action, and that the *Barker v. Frank* case was res judicata to the *Fountain Lake v. Adkins* action.

On March 10, 2004, the State Defendants responded, praying that the circuit court grant Fountain Lake's motion for partial summary judgment, assess the appropriate millage rate for the Fountain Lake taxpayers, and grant them relief to which they were entitled. Intervenors filed a response on March 10, 2004, requesting the circuit court to deny Fountain Lake's motion. On March 25, 2004, *Fountain Lake v. Adkins* was consolidated with *Barker v. Frank* for purposes of resolution.

On July 12, 2004, the circuit court entered an order denying Fountain Lake's motion for partial summary judgment, ruling that "there are genuine questions of material fact that have been raised by the intervenors and need to be resolved." The circuit court transferred the case to Saline County Circuit Court because "the subject matter herein concerns the stipulation terminating the litigation and a final order in the matter of *Barker, et al. v. Frank, et al.*, Saline County Circuit No. 94, 7192 . . . [.]"

On December 13, 2004, the circuit court dismissed the *Fountain Lake v. Adkins* complaint, finding that *Fountain Lake v. Adkins* was an attempt to change the final judgment and order entered in the *Barker v. Frank* action and was subject to res judicata. The circuit court further ruled that (1) the *Barker v. Frank* settlement qualified as a court-order exception under Amendment 74; and (2) the present case was barred by the doctrine of res judicata. The circuit court dismissed Fountain Lake's complaint with prejudice and ordered a return of the escrowed tax money, reinstatement of the millage of 30.25 mills for tax years 2004 and 2005, and the dissolution of the temporary order.

A notice of appeal was filed by Mike Beebe, in his official capacity as Attorney General, and Steve Oliver, in his official

capacity as Garland County Prosecuting Attorney (jointly "State"), on January 11, 2005. For the order of dismissal, the State now brings its appeal.

We now turn to the applicable standard of review. Here, the circuit court's order dismissed Fountain Lake's complaint. However, in the order, the circuit court stated that it considered an August 27, 2004, hearing on the matter. When matters outside the pleadings are presented and not excluded by the trial court, a motion to dismiss will be treated as a motion for summary judgment. *Rankin v. Farmers Tractor & Equip. Co.*, 319 Ark. 26, 888 S.W.2d 657 (1994). Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *Id.* However, in a case like this one that does not involve the question of whether factual issues exist but rather the application of the legal doctrine of res judicata, we simply determine whether appellee was entitled to judgment as a matter of law. *See City of Little Rock v. Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994).

For its first point on appeal, the State argues that the trial court erred in ruling that the doctrine of res judicata barred the new complaint filed by Fountain Lake pursuant to Amendment 74. Specifically, the State contends that the claims in the *Barker v. Frank* action were not litigated, but rather settled. The State maintains that it was not a party to the underlying litigation and was not served courtesy copies of crucial pleadings, such as the stipulation of settlement, notices of the settlement, and the order approving the settlement.

Fountain Lake, whose position is in alignment with the State, also argues that the trial court erred in ruling that the doctrine of res judicata barred the *Fountain Lake v. Adkins* litigation. Specifically, Fountain Lake contends that the *Barker v. Frank* litigation cannot be viewed as having determined issues arising from its compliance with Amendment 74 because that prior litigation dealt with the school district's compliance with Amendment 59.

Intervenors argue that the State lacks the requisite standing to appeal because the decision does not aggrieve it. Specifically, they contend that, while the State was a defendant in the case below, it "never filed a pleading requesting affirmative relief." Further, the intervenors assert that the *Barker v. Frank* settlement provided Fountain Lake with 30.25 mills of revenue, an "ample

millage from the settlement to provide for the Amendment 74 millage rate." Alternatively, they argue that the trial court correctly ruled that the doctrine of res judicata applied to the *Fountain Lake v. Adkins* litigation.

We first address the threshold issue of standing. The general rule regarding standing is that an appellate court cannot act upon an appeal taken by one not a party to the action below. *In re $3,166,199*, 337 Ark. 74, 79, 987 S.W.2d 663, 666 (1999). Under our rules, party status is generally obtained by initiating an action through filing a complaint or responding to a complaint by answer. *Id.* It is also possible to become a party by intervention under Rule 24 or by joinder under Rule 19. *Id.* Here, the State was made a defendant to the action by Fountain Lake's filing of the complaint, and Intervenors concede that the State was a defendant in *Fountain Lake v. Adkins* litigation. Moreover, the present case involves a constitutional question involving the imposition of a property tax pursuant to Amendment 74. When the constitutionality of a statute is challenged, the Attorney General of this state must be notified and is entitled to be heard. Ark. Code Ann. § 16-111-106(b) (Repl. 2006); *see also Landers v. Jameson,* 355 Ark. 163, 132 S.W.3d 741 (2003). The purpose behind the notification to the Attorney General is to assure a "fully adversary and complete adjudication" of the constitutional issue. *Campbell v. Entergy Arkansas, Inc.,* 363 Ark. 132, 211 S.W.3d 500 (2005). Because the State has been named a party to the *Fountain Lake v. Adkins* case and a constitutional question is at issue, the State has standing to bring the instant appeal.

We now turn to the issue of whether the circuit court erred in ruling that the present action is barred by res judicata. Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction." *Hunt v. Perry,* 355 Ark. 303, 310, 138 S.W.3d 656, 659 (2003). Res judicata consists of "two facets, one being issue preclusion and the other claim preclusion." *Carwell Elevator Co. v. Leather,* 352 Ark. 381, 388, 101 S.W.3d 211, 216 (2003). The claim-preclusion aspect of res judicata bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Office of Child Support*

*Enforcement v. Willis*, 347 Ark. 6, 13, 59 S.W.3d 438, 443 (2001). Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *See id.*

The issue-preclusion aspect of res judicata, or collateral estoppel, "bars the relitigation of issues of law or fact actually litigated in the first suit." *Id.* The issue must have been "actually litigated and determined by a valid and final judgment" for res judicata to apply. *Id.* The elements of collateral estoppel are: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001); *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999).

■ Because the parties do not specify which doctrine is applicable to the case *sub judice*, we will provide an analysis under both doctrines. Here, the fifth element of res judicata is not satisfied in this case, as the two causes of actions do not involve the same parties or their privies. *See Willis, supra.* Here, the *Barker v. Frank* case could not govern the outcome of the *Fountain Lake* case simply because the State was neither a plaintiff nor a defendant in the *Barker v. Frank* case. Although the State was provided courtesy copies of the pleadings in *Barker v. Frank*, the State was not a party to that case. Thus, in the *Barker v. Frank* action, the State was never afforded the opportunity to present arguments or briefs to the circuit court regarding the alleged constitutional infirmity of the settlement agreement or the impact of Amendment 74 on Fountain Lake's millage structure. The State now seeks to prevent the local school districts from binding it to a settlement agreement allegedly violative of Amendment 74. For these reasons, we hold that, based upon the State's lack of participation in the *Barker v. Frank* case, the doctrine of res judicata does not bar the present *Fountain Lake v. Adkins* action.

Under the doctrine of collateral estoppel, the first inquiry is whether the issue of Amendment 74 was involved in the prior litigation. Adopted by the people of Arkansas at the 1996 general

election, Amendment 74 of the Arkansas Constitution established the uniform rate of taxation of twenty-five mills for each school district to be levied on the assessed value of property and to be used solely for the maintenance and operation of the schools. *See* Ark. Const. art. 14, § 3(b)(1). The uniform rate of tax shall not be an additional levy for school taxes but "shall replace a portion of the existing rate of tax levied by each school district available for maintenance and operation of schools in the school district." *See* Ark. Const. art. 14, § 3(b)(2). Subsection (b)(2) further provides that "[i]f the rate of tax available for maintenance and operation levied by a school district on the effective date of this amendment is less than the uniform rate of tax, the uniform rate of tax shall nevertheless be levied in the district." *Id.*[1] The revenues collected are sent to the State, and the State later distributes the total funds back to the school district. *Lake View School Dist. No. 25 of Phillips County v. Huckabee*, 364 Ark. 398, 220 S.W.3d 645 (2005).

Fountain Lake advances the argument that neither the complaint in *Barker v. Frank* nor the stipulation of settlement to which the parties agreed can "reasonably be viewed as having determined the issues arising from the Fountain Lake School District's compliance with Amendment 74." Similarly, the State asserts that "the local officials who were parties to the *Barker v. Frank* settlement had no authority to 'bargain away' any portion of a constitutionally-imposed, statewide property tax as part of their settlement of Amendment 59 litigation concerning their previously locally-imposed property taxes."

We agree with the respective positions of Fountain Lake and the State. In the *Barker v. Frank* litigation, plaintiffs filed a complaint for writ of mandamus, declaratory relief, illegal exaction, and injunctive relief, and brought the action pursuant to Amendment 59 of the Arkansas Constitution, Article 16, § 14 of the Arkansas Constitution, and Ark. Code Ann. § 26-26-401 through

---

[1] Following the adoption of Amendment 74, the legislature passed Act 1300 of 1997, which implemented Amendment 74. Section 3 of Act 1300 was codified at Ark. Code Ann. § 26-80-204(17) (Repl. 1997). However, that statute was later repealed by the General Assembly by Act 28, § 10 of 2003, in response to our decision in *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002). Subsequently, the General Assembly passed Acts 28 and 105 of the Second Extraordinary Session of 2003, codified at Ark. Code Ann. § 26-80-101 et seq. (Supp. 2005), which maintained a minimum uniform rate of ad valorem property tax of twenty-five mills.

404 (Repl. 1997), to refund all property taxes illegally exacted in the taxing unit prior to completion of a county-wide reappraisal. The *Barker v. Frank* taxpayer litigation challenged county-wide reassessments and appraisals under Amendment 59.

■ However, in its complaint filed in the *Fountain Lake v. Adkins* litigation, Fountain Lake sought declaratory relief, seeking a levy of an additional 7.55 mills in order to have the requisite twenty-five mills as required by Amendment 74. Fountain Lake sought declaratory judgment due to the existence of the stipulation of settlement in connection with the Amendment 59 litigation in *Barker v. Frank*. Therefore, based upon the contrasting allegations in the two complaints, we conclude that Amendment 74 was not litigated in the *Barker v. Frank* action.

■ Further, the second requirement of collateral estoppel is not met because the issue involving Amendment 74 was never "actually litigated." *Willis*, 347 Ark. at 15, 59 S.W.3d at 444. Unlike res judicata, which acts to bar issues that merely could have been litigated in the first action, collateral estoppel requires actual litigation in the first instance. *Willis*, 347 Ark. at 15, 59 S.W.3d at 444-45. Here, there is no proof before us that Amendment 74 was actually litigated in the *Barker v. Frank* litigation. In *Fountain Lake v. Adkins*, Fountain Lake sought declaratory judgment regarding an additional 7.75 mills that was not an issue in the prior *Barker v. Frank* litigation. More significantly, the State was not afforded the opportunity to present evidence on the issue of Amendment 74 in the *Barker v. Frank* litigation because it was a not a party in that case. Because the Amendment 74 issue was never actually litigated, the application of collateral estoppel does not apply. Therefore, we hold that the circuit court erred in ruling as a matter of law that *Fountain Lake v. Adkins* was barred by res judicata. Accordingly, we reverse the circuit court's ruling, and we remand for further proceedings.

For its second point on appeal, the State argues that the trial court erred in finding that the *Barker v. Frank* settlement was a court-order exception to Amendment 74. Intervenors argue that the trial court correctly ruled that the settlement was an exception to the requirements of Amendment 74, asserting that subsection (a) allows for "variations" in providing funding for the school systems. Fountain Lake adopts the State's position on this point.

 With regard to the trial court's ruling that the *Barker v. Frank* settlement agreement qualified as a court-order exception pursuant to Amendment 74(a), we have already determined that the State was not a party to the *Barker v. Frank* litigation. Thus, because the State cannot be bound by a court order entered in that case, the *Barker v. Frank* settlement agreement does not qualify as a court-order exception to Amendment 74. Accordingly, we hold that the trial court erred in its ruling on this issue.

Reversed and remanded.