**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 28, 2012

No. 11-20735

Lyle W. Cayce
Clerk

AUDRY HUNTER, Individually and on behalf of all others similarly situated,

Plaintiff-Appellant

v.

TRANSAMERICA LIFE INSURANCE COMPANY, a foreign corporation,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-4906

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Audry Hunter ("Hunter") appeals the district court's decision granting Transamerica Life Insurance Company's ("Transamerica") motion to dismiss her complaint, finding that her claims were barred by *res judicata* and collateral estoppel and that the court lacked jurisdiction to consider Hunter's collateral attack on a state-court judgment. Specifically, Hunter argues that the district court erred by: (1) finding that it lacked subject-matter jurisdiction; (2) determining that the judgment in *Runyan v. Transamerica Life Insurance Co.*,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20735

No. CV-09-2066 (Dec. 21, 2009 Pulaski Cnty. Cir. Ct., Ark.) [hereinafter "*Runyan*"], was entitled to preclusive effect; (3) according full faith and credit to the *Runyan* judgment because it conflicts with the Texas Insurance Code; and (4) failing to offensively apply the doctrine of issue preclusion to prevent Transamerica from raising the *Runyan* judgment as an affirmative defense. We AFFIRM the district court's judgment dismissing the lawsuit based on the preclusive effect of the *Runyan* judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hunter purchased a supplemental "cancer only" insurance policy from Transamerica's predecessor-in-interest, which is now administered by Transamerica. Hunter's policy provides, *inter alia*, that it will reimburse her for "actual charges" incurred with respect to various covered services, such as chemotherapy-related expenses. After Transamerica announced that it would interpret the term "actual charges" in the cancer insurance policy to mean the lower discounted rate that the insurer actually pays on behalf of the insured, rather than the higher "billed" charge (never paid by anyone), several class actions were filed against Transamerica by policy holders. In these class actions, the plaintiffs argued that the phrase "actual charges" meant the amount billed, regardless of how much the medical provider actually agreed to receive in satisfaction of the claim.[1]

---

[1] Essentially, despite the policy's insuring clause—which insures the policyholder "for loss incurred"—the plaintiffs in these class actions are seeking a windfall. Typically, in a situation where there is an agreement between the insurer and the medical provider, the medical provider will bill a certain amount, but the patient's insurer will reduce that charge to an amount it deems reasonable. Based upon that "reasonable rate," the insured is then responsible for his or her deductible or co-pay, and the insurer pays the rest of the "reasonable rate." The difference between the amount billed and the "reasonable rate" is never paid or owed to anyone. For example, a hospital bills a patient $1,000 for a set of x-rays. Assume the "reasonable rate" is $700. The $300 difference will never be paid or owed by either the insured or the insurer. Nevertheless, the insureds in these class actions allege that the "actual amount" that the insurer must pay to the insureds under their cancer-only policies means the amount billed—$1,000—rather than the amount actually owed—$700—providing the insured

2

No. 11-20735

One of these class actions was *Runyan*—a case filed in Arkansas state court.  In that case, the plaintiff class reached a settlement with Transamerica that accepted that the phrase "actual charges" meant the lower discounted amount in return for, *inter alia*, receiving a premium rate freeze for a period of time.  This settlement was approved by the Arkansas court.  Rather than opting out of the *Runyan* class action, Hunter filed pro se objections to the settlement agreement.  In her objections, however, Hunter expressly stated that she had "no problem with a plan paying 'Actual Charges' for Medical services according to one of the proposed settlement features.  This seems fair and reasonable.  But constant increases in premiums is not fair and reasonable."  She also said that she was not able to appear at the fairness hearing.

Later, after obtaining counsel, Hunter filed additional objections and a motion to intervene.  The Arkansas circuit court denied her motion to intervene, noting that Hunter initially represented to the court that she did not intend to participate in the fairness hearing and that she did not object to the definition of "actual charges" in her pro se objections.  The court pointed out that although Hunter changed her mind once represented by counsel, she did not timely file her motion to intervene.  The court also denied her request to supplement her objections, noting that Hunter's later objections were untimely and "contradict[ed] rather than supplement[ed]" her previously-filed pro se objections.  Hunter appealed the denial of her motion to intervene to the Arkansas Supreme Court.  *See Hunter v. Runyan*, No. 10-306, 2011 WL 478594 (Ark. Feb. 9, 2011).

On appeal, the Arkansas Supreme Court addressed Hunter's argument that she was denied her due process right to participate in the *Runyan* fairness hearing.  *Id.* at *25.  The court also addressed the final order and judgment

---

with a $300 windfall.

3

approving the settlement in *Runyan*. *Id.* at *7. The court specifically noted, in affirming the denial of Hunter's motion to intervene and finding that she was afforded adequate process, that "the circuit court did allow Hunter's counsel to appear at the hearing on her motion to intervene and to present argument as to [her] supplemental requests; thus, Hunter did have an opportunity to be heard . . . ." *Id.* at *25.

The Arkansas Supreme Court also rejected Hunter's argument that she was not adequately represented by class counsel because the parties' interests were not adverse. On the contrary, the court found that "even if the general parameters of a settlement had been reached, the fact remains that the parties were adverse and negotiations could have broken down at any time before the written agreement was executed . . . ." *Id.* at *13. The Arkansas Supreme Court thus affirmed the denial of Hunter's motion to intervene and otherwise dismissed the appellants' challenges to the settlement. The U.S. Supreme Court denied certiorari. *See Crager v. Runyan*, 132 S. Ct. 243 (2011).

Before the Arkansas Supreme Court issued its decision, Hunter filed this action in the United States District Court for the Southern District of Texas. She argued that the *Runyan* settlement was not entitled to preclusive effect because it was rendered in violation of the class members' due process rights, and it was not fully contested in good faith. Shortly after the Arkansas Supreme Court affirmed the denial of Hunter's motion to intervene, Transamerica filed a motion to dismiss the federal suit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Transamerica argued that the *Runyan* judgment was entitled to preclusive effect, Hunter lacked standing, the district court lacked subject-matter jurisdiction, and the court was bound to enforce the judgment pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738.

The district court granted Transamerica's motion to dismiss, finding that it need not address the merits of Hunter's suit because "[t]he plaintiff is

attempting another bite at the apple by trying to re-litigate a case that has already settled." The court concluded that Hunter's "claims are barred by *res judicata*, collateral estoppel, and the release in the *Runyan* final judgment, pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738." Additionally, the court noted that it lacked jurisdiction because "[i]f the plaintiff is not satisfied with the Arkansas Supreme Court's decision, her exclusive remedy lies with the U.S. Supreme Court, not this Court." Hunter timely appealed.

## II. STANDARD OF REVIEW AND JURISDICTION

This court reviews a decision granting a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) de novo, applying the same standard as the district court. *See Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 702 (5th Cir. 2007). However, although the district court purported to rule on Transamerica's motion to dismiss, both Transamerica and Hunter offered documents outside of the pleadings (other than documents attached to and referenced in the complaint), and it appears that the district court considered these documents.[2]

Accordingly, because the district court considered documents outside the pleadings and Hunter had notice and opportunity to respond, we construe the district court's order as a grant of summary judgment. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56[a]." (citation omitted)); *Bolen v.*

---

[2] Any challenge to the district court's consideration of these documents fails for two reasons. First, Hunter actually presented her own evidence and had a reasonable opportunity to respond before the district court decided the motion to dismiss. Second, although she objected below to the district court's consideration of Transamerica's exhibits and mentions this issue in a footnote of her brief on appeal, she does not object to the lack of proper notice on appeal and therefore has waived this argument. *See Gen. Universal Sys. v. HAL, Inc.*, 500 F.3d 444, 454 (5th Cir. 2007) ("[F]ailure to advance arguments in the body of the appellant's brief . . . result[s] in waiver of those arguments" even where an argument is mentioned in passing in the text of a brief).

*Dengel*, 340 F.3d 300, 312-13 (5th Cir. 2003) ("Even if the district court erred by failing to review [the movant's] motion to dismiss as a motion for summary judgment, this error is reversible only if [the non-movant] had no notice or opportunity to refute [the movant's] allegations in the motion to dismiss."); *see also* FED. R. CIV. P. 12(d).

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Gen. Universal Sys.*, 500 F.3d at 448. We view all evidence in the light most favorable to the non-movant. *Id.* Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As discussed below, the district court had jurisdiction pursuant to 28 U.S.C. § 1332, and this court has jurisdiction under 28 U.S.C. § 1291.

## III.  DISCUSSION

### A.    *Subject-Matter Jurisdiction Exists to Consider Hunter's Claims*

The district court erred in concluding that it lacked jurisdiction over Hunter's claims based on the Arkansas Supreme Court's decision in *Runyan*. The district court's order cites *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970), and *Corpus Christi Taxpayer's Ass'n v. Corpus Christi*, 858 F.2d 973, 976 (5th Cir. 1988), which stand for the proposition that lower federal courts cannot sit in direct review of state-court decisions. However, at the time that Hunter filed her federal lawsuit, the state-court judgment denying her motion to intervene and her challenge to the *Runyan* settlement agreement was not final. Consequently, the district court did not stand in direct review of a final state court decision and it was free to exercise jurisdiction over the matter. Indeed, the Court in *Atlantic Coast Line* expressly recognized that when state and federal courts have

concurrent jurisdiction, "neither court [is] free to prevent either party from simultaneously pursuing claims in both courts." 398 U.S. at 295. Thus, the district court and the state court had concurrent jurisdiction at the time Hunter filed her federal suit, and the district court had jurisdiction under 28 U.S.C. § 1332.

**B.    *The* Runyan *Judgment Has Preclusive Effect and Bars Hunter's Collateral Attack***

The district court alternatively and appropriately determined that the *Runyan* judgment was entitled to preclusive effect. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 293 (2005) ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."). Hunter argues that preclusion does not apply and that she is entitled to collaterally attack the *Runyan* judgment because the district court cannot give full faith and credit to a judgment that was entered in violation of due process. Hunter relies on the Supreme Court's decision in *Hansberry v. Lee*, 311 U.S. 32, 39-42 (1940), where the Court held that a court should not give full faith and credit to a judgment in a class action lawsuit against absent class members who were neither adequately represented nor afforded due process. Hunter also relies on our decision in *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), which held that a district court erred in applying principles of *res judicata* to a prior class action judgment because the class representative did not adequately represent the interests of the class. *Id.* at 75.

Although Hunter is correct that a litigant may collaterally attack a class action judgment based on a lack of due process, *see id.* at 74-75, her argument fails on these facts for several reasons. First, Hunter received the required "notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (recognizing that absent class members must be afforded adequate

due process to be bound by a class action judgment).  The evidence is undisputed that she actually received notice and an opportunity to be heard in the *Runyan* proceedings: she received notice of the *Runyan* class action settlement; she had an opportunity to object to the settlement agreement; and her counsel presented arguments to the state court concerning the fairness hearing.  Thus, this is not a case where an absent class member did not receive notice at all.  *See Hansberry*, 311 U.S. at 42-43 (noting that "members of a class not present as parties to the litigation may be bound by the judgment . . . where they *actually participate* in the conduct of the litigation in which members of the class are present as parties").

Second, and more importantly, Hunter was not an absent class member; she actually litigated in state court whether the *Runyan* settlement was reached in violation of her due process rights and declined to opt out of that proceeding. *See Hunter,* 2011 WL 478594, at *25-26.  The Full Faith and Credit Act provides that "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  "Federal courts may not 'employ their own rules . . . in determining the effect of state judgments,' but must 'accept the rules chosen by the State from which the judgment is taken.'" *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982)).  Hunter's participation in *Runyan* distinguishes her case from *Gonzales*, 474 F.2d at 74, where we addressed whether absent class members were bound by the determination in that case.  There, we concluded that absent class members were not bound because the named plaintiff obtained relief that was not given to other class members; his failure to appeal that lack of relief resulted in a conclusion that he was not an adequate class representative at that point; accordingly, absent class members were not bound.  *Id.* at 74-76.

No. 11-20735

Thus, we must apply Arkansas law to determine what effect the Arkansas courts would give to the *Runyan* judgment. Arkansas law provides that "[t]he claim-preclusion aspect of *res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." *Beebe v. Fountain Lake Sch. Dist.*, 231 S.W.3d 628, 635 (Ark. 2006). The only element that Hunter argues is missing in this case is the third element—that the *Runyan* litigation was not fully contested in good faith.

However, Hunter actually litigated the "good faith" issue in the Arkansas courts and therefore this issue is itself barred by the doctrine of *res judicata*. Before the Arkansas Supreme Court, Hunter argued that the Arkansas state court violated her due process right to participate in the *Runyan* litigation. *Hunter,* 2011 WL 478594, at *24-25. The court explicitly rejected her argument, noting that her "argument is wholly without merit" because Hunter had previously "waived her right to participate in the [fairness] hearing in her pro se objection that she timely filed with the circuit court," and had untimely filed her supplemental objections and request to appear at the fairness hearing. *Id.*

Additionally, another party in *Hunter* argued that "the parties in [*Runyan* were] not adverse because they had reached agreement on the material terms of the settlement prior to the complaint being filed." *Id.* at *12. The court squarely rejected this argument as well, noting that the "contention that the interests of [Transamerica] and the Settling Plaintiffs were no longer adverse because the parties had already reached a settlement when the complaint was filed is simply not supported by the record." *Id.* at *13. Thus, the Arkansas Supreme Court has already decided that the *Runyan* judgment was litigated in good faith in a ruling where Hunter was a direct (not absent) participant.

9

No. 11-20735

Therefore, all state requirements for finding that a challenge to the *Runyan* judgment is barred by the doctrine of *res judicata* have been met. *See Beebe*, 231 S.W.3d at 635. Because Hunter's claims that *Runyan* was issued in violation of due process have already been litigated, those determinations are entitled to preclusive effect, and Hunter cannot raise them again here. Thus, we need not reach the question of the degree to which a subsequent court must analyze the due process provided to an absent class member, because we do not have that situation here.[3] The district court did not err in concluding that *Runyan* is enforceable.

**C.    *Interpretation of "Actual Charges" Does Not Prevent According Full Faith and Credit to the* Runyan *Judgment***

We also find Hunter's argument that the district court erred by giving full faith and credit to the *Runyan* judgment because it misinterpreted the phrase "actual charges" unavailing for two reasons. First, *Runyan* did not interpret the phrase "actual charges" in a manner inconsistent with Texas law. Section 1201.0601 of the Texas Insurance Code defines the term "actual charge" as "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided." TEX. INS. CODE ANN. § 1201.0601 (2005). Hunter suggests that this definition cannot apply to her policy that was issued in 1997 on a "guaranteed renewable" basis because the House Bill that was signed into law by the Governor states that "[e]xcept as provided by Subsection (b) of this

---

[3] In a related case, the Sixth Circuit addressed the preclusive effect of this judgment on absent class members who sought to be represented by Gooch, a class member who opted out. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 420 (6th Cir. 2012). *Gooch* determined that it is appropriate for a federal court addressing claims of absent class members to conduct a "full" due process review in deciding whether to accord *res judicata* effect to the prior proceeding. *Id.* In *Gooch*, the court determined that it should independently analyze both the notice given and the adequacy of the class representation. *Id.* at 420-22. After undertaking that analysis, it determined that the *Runyan* settlement was entitled to preclusive effect as to absent class members. *Id.* at 426-27. As we have stated, Hunter was not "absent," but even if we applied a "full" due process analysis, we would reach the same result as the Sixth Circuit and adopt its reasoning in that regard.

10

section, the change in law made by the Act applies only to an insurance policy delivered, issued for delivery, or renewed on or after the effective date of this Act [i.e., September 1, 2005]," TEX. H.B. 1775, 79th Leg. (2005), *codified by* TEX. INS. CODE ANN. § 1201.0601.  Instead, Hunter argues, Transamerica must interpret the term "actual charges" in accordance with the law as it existed prior to September 1, 2005.

Hunter's interpretation of the statute does not account for the language in subsection (2)(b) of the House Bill, which provides that "[t]he change in law made by this Act applies to an insurance policy *in effect* on the effective date of this Act only if the policy does not define 'actual charge' or 'actual fee.'"  TEX. H.B. 1775, 79th Leg. (2005) (emphasis added).  In order to give effect to subsection (2)(b), we must apply the definition of "actual charges" in the statute to any policy "in effect" on September 1, 2005, *unless* the policy defines "actual charge" or "actual fee."  *See* TEX. H.B. 1775, 79th Leg. (2005) (comparing subsection 2(a) with subsection 2(b)); *see also Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957) ("Every word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give[n] effect if reasonably possible.").  Because Hunter's policy was "in effect" on September 1, 2005, and did not define "actual charges," the Texas Insurance Code's definition of that term applies, and the *Runyan* judgment's interpretation of this term comports with Texas law.

Even if Hunter's argument is correct, and the phrase "actual charges" should be interpreted according to case law prior to the effective date of the statute, the *Runyan* agreement's interpretation of "actual charges" would not be inconsistent with Texas law.  Hunter argues that because the term "actual charges" is ambiguous, it should be interpreted in her favor.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.

1991).[4] However, Hunter cites no authority for the proposition that, under Texas law at the time her insurance policy was issued, Texas courts would interpret "actual charges" to mean something other than the amount actually sought to be recovered by the provider for services rendered from the insurer (together with any deductible paid or to be paid by the insured). Indeed, Texas courts would likely have interpreted the phrase "actual charges" in a manner that would prevent the "windfall" that Hunter seeks. *Cf. Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011) (noting that the effect of a statute passed in 2003 that limited a patient's recovery to the amount paid, rather than the billed amount, would "prevent a 'windfall' to a claimant"); *see generally Paramount Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 353 S.W.2d 841, 844 (Tex. 1962) (involving a fire insurance policy and refusing to allow recovery beyond that which is necessary to put an insured "in the same condition pecuniarily in which he would have been had there been no fire" (internal quotation marks and citation omitted)). As explained in *Haygood*, 356 S.W.3d at 397, the Texas Legislature added a provision to the Texas Civil Practice and Remedies Code in 2003—which was intended to reflect existing law—that provided that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant," TEX. CIV. PRAC. & REM. CODE § 41.0105. The court's analysis in *Haygood* indicates that even prior to 2005, Texas courts would have interpreted the phrase "actual charges" to avoid giving a "windfall" to Hunter.

Finally, even assuming the *Runyan* judgment misapplied Texas law, the judgment would still be entitled to full faith and credit. While it is true that "the

---

[4] Although Hunter cites this court's opinion in *Guidry v. American Public Life Insurance Co.*, 512 F.3d 177 (5th Cir. 2007), for the proposition that the phrase "actual charges" is ambiguous, that case applied Louisiana law, and it did not hold that the phrase "actual charges" meant the amount billed. *Id.* at 183-84.

No. 11-20735

Full Faith and Credit Clause does not require a State to *apply* another State's law in violation of its own legitimate public policy," *Nevada v. Hall*, 440 U.S. 410, 422 (1979) (emphasis added), a *judgment* of a state is entitled to full faith and credit in another state even if it misapplies that state's law. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). As explained by the Court, while "[a] court may be guided by the forum State's 'public policy' in determining the *law* applicable to a controversy[,]" there is "no roving 'public policy exception' to the full faith and credit due *judgments*." *Id.* at 223. The Court cited two of its prior cases that accorded full faith and credit to judgments despite the fact that the judgments misapplied the law of the state asked to recognize those judgments. *See id.* at 233 (citing *Estin v. Estin*, 334 U.S. 541, 546 (1948); *Fauntleroy v. Lum*, 210 U.S. 230, 237 (1908)). Thus, the *Runyan* judgment is entitled to full faith and credit even if it misapplies Texas law.

**D.   *Offensive Issue Preclusion Does Not Apply to Transamerica's Affirmative Defense***

Hunter argues on appeal that because Transamerica was a party to a different proceeding in which a court held that the *Runyan* judgment violated due process, Transamerica cannot relitigate the question of whether the *Runyan* judgment is entitled to preclusive effect.[5] *See Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 416 (D.S.C. 2011). In *Hege*, the federal district court concluded that as applied to the Heges—absent class members in *Runyan* who did not opt out of the settlement agreement but did not move to intervene—the notice was deficient because it did not adequately address the meaning of "actual charges" under South Carolina law. *Id.* at 430-31. The court also concluded that the

---

[5] Transamerica argues that Hunter waived her argument concerning the offensive application of preclusion by failing to raise it below. While she could have discussed this argument more prominently in her submissions to the district court, we find that the issue is not waived because Hunter raised the argument several times in her response to Transamerica's motion to dismiss.

13

No. 11-20735

Heges were not adequately represented by class counsel and that the *Runyan* judgment was not entitled to preclusive effect under Arkansas law because it was not fully contested in good faith and was not based on proper jurisdiction. *Id.* at 432, 435-36.

Despite this holding in *Hege*, the district court here did not err by declining to offensively apply the doctrine of issue preclusion to Transamerica's defense. We have declined to offensively apply collateral estoppel in situations where the ruling at issue was neither final nor subject to appellate review, finding that it would be unfair to apply issue preclusion to such an order. *See, e.g., Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395-96 (5th Cir. 1998) (concluding that a district court did not abuse its discretion in refusing to offensively apply collateral estoppel to a jurisdictional ruling that could not be reviewed on appeal); *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1270 (5th Cir. 1986) (noting that the court was not aware of "any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable, nor any which contradicts [its]   . . . opinions stating that partial summary judgment orders under Rule 56(d) are not preclusive").

For example, this court in *Avondale Shipyards* refused to give preclusive effect to a partial summary judgment order because that order "lack[ed] the finality necessary for preclusion." 786 F.2d at 1270. The court rejected the argument that such an order should be given preclusive effect because there was later a final judgment in the case. *Id.* at 1272. It noted that while the final judgment could support claim preclusion, the summary judgment order was not mentioned in that judgment and therefore could not operate to render the partial summary judgment order "final" for purposes of collateral estoppel. *Id.*

Here, similar to the situation in *Avondale Shipyards*, Hunter points to an order denying a motion for summary judgment in *Hege* in support of her

14

argument that offensive collateral estoppel should apply. *See Hege*, 780 F. Supp. 2d at 439. However, such an order is not final and therefore cannot preclude Transamerica from asserting that the Runyan judgment is entitled to preclusive effect. Moreover, the parties in the *Hege* litigation settled, and the final judgment in that case did not mention the order denying the motion for summary judgment. *See Hege v. Aegon USA, LLC*, No. 8:10-cv-01578-GRA, Final Judgment, at 1 (D.S.C. July 11, 2011). Thus, pursuant to this court's precedent, the *Hege* decision cannot support Hunter's offensive collateral estoppel argument.

Additionally, even if we were to give the interlocutory order in *Hege* preclusive effect, it does not bar Transamerica's affirmative defense. *Hege*'s ruling on the notice issue is not "identical" to the issue in this case, because it involved the definition of "actual charges" under South Carolina law, not Texas law (which, as discussed above, is not inconsistent with the definition reached through settlement). *See* 780 F. Supp. 2d at 430-31. Further, unlike Hunter, who not only appealed the denial of her motion to intervene but obtained a ruling in the state courts on her due process argument, the parties in *Hege* did not actually participate in *Runyan*. *See id*. at 422-23 (explaining that the Heges did not attempt to intervene and therefore could not challenge the *Runyan* judgment on direct appeal). Therefore, the district court did not err in declining to offensively apply the doctrine of collateral estoppel to Transamerica's affirmative defense.

## IV. CONCLUSION

The district court appropriately determined that the *Runyan* judgment is entitled to preclusive effect and did not err in affording that judgment full faith and credit. The district court also did not err in declining to offensively apply the doctrine of collateral estoppel to prevent Transamerica from arguing that the

No. 11-20735

*Runyan* plaintiffs were afforded adequate due process.  Accordingly, we AFFIRM the district court's judgment dismissing the case.