
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-757

| | |
|---|---|
| MARVIN DAILY, TAMARA DAILY, DAILY'S FLEETING & HARBOR SERVICE, INC., AND T&M GROCERY SERVICE, INC.<br><br>APPELLANTS<br><br>V.<br><br>JOHN LANGHAM AND OLD FORT PROPERTIES, LLC<br><br>APPELLEES | Opinion Delivered: May 17, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FCV-16-329]<br><br>HONORABLE J. MICHAEL FITZHUGH, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Marvin Daily, Tamara Daily, Daily's Fleeting & Harbor Service, Inc. ("Fleeting & Harbor"), and T&M Grocery Services, Inc. ("T&M"), appeal the Sebastian County Circuit Court order dismissing their complaint against John Langham and Old Fort Properties, LLC ("Old Fort"). On appeal, they argue that the circuit court erred by finding their claim was barred by res judicata. We affirm.

Marvin and Tamara are husband and wife. They own Fleeting & Harbor and T&M. In July 2012, Marvin, Tamara, Fleeting & Harbor, and T&M entered into an agreement to sell Marvin Properties, LLC ("Marvin Properties"), and other miscellaneous items to John

Langham.[1] Marvin Properties' assets included an 18.9-acre tract of land on the Arkansas River (the "riverfront property"). The July 2012 agreement collectively refers to Marvin, Tamara, Fleeting & Harbor, and T&M as "Daily."

The agreement notes that Elizabeth Perry, Marvin's former business partner and girlfriend, had an interest in Marvin Properties and that Marvin and Perry had been litigating the ownership of the company in the Sebastian County Circuit Court (the "Perry litigation"). Specifically, the parties in the Perry litigation included Perry as the plaintiff and Marvin, Marvin Properties, and Fleeting & Harbor as the defendants. Tamara and T&M were not parties to the litigation. Paragraphs five, six, and eight of the July 2012 agreement provide in part:

> 5. The purchase price will be $300,000. It will be paid by assumption of an indebtedness in favor of David Craven, of $165,418.34, and seller financing for the remainder as defined below, with Langham agreeing that once he has sold a boat currently for sale and the Perry litigation is settled, he will pay $50,000 on the Seller financed obligation.
>
> . . . .
>
> 6. Beginning with the June 2012 payment, Langham will pay the David Craven monthly payment, and all payments made by him will be credited against the purchase price and set off against the amount that will be financed by Seller financing.
>
> . . . .
>
> 8. The parties will close after the Perry Litigation is settled, or Perry agrees to the sale, and the title insurance commitment is issued confirming that there are no title defects that will interfere with Langham's intended use of the Property or with marketability of title.

---

[1]The miscellaneous items included a crane, two trailers, tools, three portable outbuildings, a mobile home, a tugboat, and a United States Army Corps of Engineers permit.

On January 13, 2013, the Sebastian County Circuit Court entered an order in the Perry litigation. The court noted that the sole issue to be resolved was the division of Marvin and Perry's interests in Marvin Properties. The court ordered that the net proceeds from the July 2012 agreement to sell Marvin Properties shall be divided equally between Perry and Marvin. Following the entry of the court's order, in February 2014, Langham assigned his interest in the July 2012 agreement to his company, Old Fort.

On February 2, 2015, Old Fort filed a petition for intervention and third-party demand in the Perry litigation against Marvin Properties, Marvin, and Perry and alleged claims for specific performance, breach of contract, and unjust enrichment. Specifically, it alleged that Langham had made the monthly payments to Craven, Marvin Properties' creditor, pursuant to the July 2012 agreement but that Perry had refused to accept payments for the purchase price of the riverfront property and had refused to transfer it.

On October 19, 2015, Marvin Properties, Marvin, Perry, Fleeting & Harbor, and Old Fort filed a joint motion to dismiss. They alleged that "all claims and controversies existing between them in the above captioned matters have been resolved" and asked the court to "dismiss all claims . . . with prejudice." On that same day, the circuit court entered an order dismissing Perry's complaint against Marvin, Marvin Properties, and Fleeting & Harbor with prejudice. The court also dismissed Old Fort's third-party complaint against Perry, Marvin, and Marvin Properties with prejudice.

On March 22, 2016, Marvin, Tamara, Fleeting & Harbor, and T&M filed the instant action against Langham and Old Fort. They alleged that Langham and Old Fort had failed

to pay the remaining balance on the July 2012 agreement, and they asserted a claim for breach of contract.

In response, Langham and Old Fort filed a joint motion to dismiss the complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(6), asserting that the suit was barred by res judicata as result of the October 19, 2015 order of dismissal with prejudice in the Perry litigation. The circuit court agreed, and on May 26, 2016, it dismissed the complaint. Marvin, Tamara, Fleeting & Harbor, and T&M timely appealed the order to this court. On appeal, they argue that the circuit court erred in finding their suit was barred by res judicata.[2]

We generally review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *Winrock Grass Farm, Inc. v. Affiliated Real Estate Appraisers of Ark., Inc.*, 2010 Ark. App. 279, 373 S.W.3d 907 (citing *Statewide Outdoor Advert., LLC v. Town of Avoca*, 104 Ark. App. 10, 289 S.W.3d 111 (2008)). On those occasions where the circuit court is presented with documents outside the pleadings, we treat the case as an appeal from a summary judgment, *see Bayird v. Floyd*, 2009 Ark. 455, 344 S.W.3d 80, and view the evidence in the light most favorable to the party opposing the motion. *Winrock Grass Farm*, 2010 Ark. App. 279, 373 S.W.3d 907 (citing *Watkins v. S. Farm Bureau Cas. Ins. Co.*, 2009 Ark. App. 693, 370 S.W.3d 848). However, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law. *Baptist Health*

---

[2]From this point on, we refer to Marvin, Tamara, Fleeting & Harbor, and T&M jointly as the "appellants."

*v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269; *Winrock Grass Farm*, 2010 Ark. App. 279, 373 S.W.3d 907.

Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction." *Baptist Health*, 2010 Ark. 358, at 7, 373 S.W.3d at 278 (citing *Beebe v. Fountain Lake Sch. Dist.*, 365 Ark. 536, 231 S.W.3d 628 (2006)). Res judicata consists of two facets, one being issue preclusion and the other claim preclusion. *Id*. The claim-preclusion aspect of res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Id*.

In this case, appellants argue that res judicata does not apply because Langham and Old Fort failed to establish requirements four and five of claim preclusion. Specifically, as to requirement four, appellants argue that they could not assert the instant claim in the previous lawsuit because paragraphs five and eight of the July 2012 agreement state that closing would occur after the Perry litigation had been resolved. They point out that the Perry litigation was not resolved until the circuit court entered the October 19, 2015 order of dismissal. Thus, appellants claim they could not bring the current lawsuit until after the court had entered the dismissal order.

We disagree and hold that the current litigation and the third-party complaint in the Perry litigation involve the same claim. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated.

5

*Baptist Health*, 2010 Ark. 358, 373 S.W.3d 269. When a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.*

In this case, both the current litigation and the third-party complaint assert claims for breach of the July 2012 agreement. Specifically, in the third-party complaint, Old Fort alleged that Perry had refused to accept final payments and refused to transfer the riverfront property pursuant to the contract, and it asserted a claim for breach of contract. In the current litigation, appellants allege that Old Fort and Langham refused to pay the remaining balance on the contract, and they assert a breach-of-contract claim. Thus, both the third-party complaint and the current litigation are based on the same subject matter. Even though the July 2012 agreement provides that closing would occur after the Perry litigation had concluded, res judicata applies to new legal issues when the case is based on the same subject matter as the previous lawsuit. *See id.* Further, the parties stated in their joint motion to dismiss that "all claims and controversies existing between them [had] been resolved," and they approved the court's October 19, 2015 order of dismissal with prejudice. Accordingly, we hold that the suits involve the same claim.

As to requirement five, appellants argue that the res judicata bar does not apply to T&M and Tamara because they were not parties to the Perry litigation. They point out that only Marvin and Fleeting & Harbor were parties in the Perry ligation. We again disagree with appellants.

Privity of parties within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right. *Winrock Grass Farm*, 2010 Ark.

App. 279, 373 S.W.3d 907. The parties need not be precisely the same for a judgment in one action to bar another, as long as there is a substantial identity and the same claim is at stake. *Van Buren v. Ark. Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002). Our supreme court has never required strict privity in the application of res judicata but instead has supported the idea that there must be a substantial identity of parties to apply the doctrine. *Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000). We have explained:

> It has been suggested that privity is merely a word used to say that the relationship between one who is a party and another person is close enough that a judgment that binds the one who is a party should also bind the other person . . . It has also been held that the identity of parties or their privies for res judicata purposes is a factual determination of substance, not mere form.

*Ark. Dep't of Human Servs. v. Dearman*, 40 Ark. App. 63, 68, 842 S.W.2d 449, 452 (1992).

For example, our supreme court has held that a principal–agent relationship is sufficient to satisfy the privity requirement for purposes of res judicata. *Jayel Corp. v. Cochran*, 366 Ark. 175, 234 S.W.3d 278 (2006). Further, our supreme court has found privity for purposes of res judicata between a husband and wife in a land dispute, *Collum v. Hervey*, 176 Ark. 714, 3 S.W.2d 993 (1928) (holding that a title quieted against a husband was conclusive against the wife who had not been a party in the original lawsuit), between a brother and a sister in a claim alleging civil conspiracy and tortious interference, *Francis*, 343 Ark. 104, 31 S.W.3d 841 (holding that a son's settlement with father involving a guardianship proceeding was res judicata as to father's subsequent suit with daughter), and between a testator and his remote heirs, *Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993) (holding that a settlement by a testator is binding on the remote heirs). On the other hand, our supreme court has held that the fact that an individual owns stock in a corporation does not alone

SLIP OPINION

create privity between the individual and the corporation. *Walthour v. Finley*, 237 Ark. 106, 372 S.W.2d 390 (1963).

In this case, Tamara and T&M were in privity with Marvin because their interests were so identified in interest with Marvin's that he represented the same legal right. Tamara and Marvin are husband and wife, and they own T&M together. Further, T&M and Tamara were parties to the July 2012 agreement, and the agreement collectively referred to Marvin, Tamara, T&M, and Fleeting & Harbor as "Daily." Given these circumstances, we hold that Tamara and T&M were in privity with Marvin. Accordingly, we affirm the circuit court's dismissal of appellant's complaint as barred by res judicata.

Affirmed.

GLADWIN and GLOVER, JJ., agree.

*Lisa-Marie Norris* and *Kevin Holmes*, for appellant.

*Byars & Hall, PLLC*, by: *Joe D. Byars, Jr.*, for appellees.